COMMISSIONER OF MOTOR VEHICLES *v.* DeMILO
AND COMPANY, INC.
(15136)

PETERS, C. J., and CALLAHAN, BORDEN, NORCOTT and KATZ, Js.

Argued February 8—decision released May 23, 1995

*Daniel Shepro*, for the appellant (defendant).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (plaintiff).

CALLAHAN, J. The principal question in this appeal is the extent to which a trial court judgment, the appeal from which was dismissed as moot, can later be enforced by the party that initially had prevailed. The defendant, DeMilo and Company, Inc. (DeMilo), appeals from the judgment of the trial court, *Hon. David M. Shea,* state trial referee,[1] which concluded that: (1) the plaintiff, the commissioner of motor vehicles (commissioner), could recover from DeMilo, pursuant to General Statutes § 14-67v,[2] the cost of remediating the

---

[1] DeMilo appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] General Statutes § 14-67v provides: "PENALTY. INJUNCTION TO RESTRAIN VIOLATION. Any person, or any officer or agent of any firm or corporation, who establishes, operates or maintains a motor vehicle junk yard or motor vehicle junk business in any location within a restricted district created under the provisions of this subdivision (H), or establishes, operates or maintains such junk yard or business without procuring such certificate of approval from the local authority or establishes, operates or maintains an intermediate processor in violation of any provision of this subdivision (H), or transports or hauls any motor vehicle or used parts of a motor vehicle in violation of any provision of this subdivision (H) or violates any provision of this subdivision (H), shall be fined not more than one hundred dollars or imprisoned not more than ninety days or both. Each day of such establishment, operation or maintenance in violation hereof shall constitute a separate offense. The commissioner of motor vehicles may, after notice and hearing, impose a civil penalty of not more than two thousand dollars on any person, firm or corporation who establishes, operates or maintains such junkyard or business without a license. In addition to the penalties herein prescribed, the commissioner of motor vehicles or the local authority, upon a violation of any of the provisions of this subdivision (H), may bring an application to the superior court for the judicial district where such yard or business is located to enjoin a further operation or maintenance of such yard or business and to abate the same as a public nuisance. Said court may, upon finding such yard or business has been established, operated or maintained in violation of the provisions of this subdivision (H), issue such injunction as it deems equitable and make such order for the discontinuance or abatement

conditions that a previous court had found constituted a public nuisance on DeMilo's property; and (2) the commissioner was entitled to foreclose on a mortgage on DeMilo's real estate that had been given by DeMilo to secure a bond to cover the cost of the abatement of the public nuisance. We affirm the judgment of the trial court.

The relevant facts essentially are undisputed. Since 1975, DeMilo has owned and operated a motor vehicle junkyard and parts business in Hartford. On August 1, 1985, the department of transportation (transportation) acquired, by eminent domain, a portion of DeMilo's land. That land consisted of the southeasterly corner of DeMilo's rectangularly shaped parcel, as well as some adjoining land leased by DeMilo from the Barilla family, on which DeMilo had stored some of its junked vehicles. The land had been acquired by transportation in order to construct a new service road, now known as Liebert Road, in connection with transportation's reconstruction of Interstate 91. Because the property acquired by transportation contained many junked vehicles and automobile parts, transportation was inhibited from going forward with its construction plans.

In connection with its acquisition of DeMilo's land, transportation requested that the commissioner investigate whether DeMilo was in compliance with the department of motor vehicles (motor vehicles) regulations regarding automobile junkyards. In August, 1986, inspectors from motor vehicles visited the property and found numerous violations of

of such yard or business as a nuisance as it finds to be necessary, including authorization to the commissioner of motor vehicles to enter such yard or business to eliminate, at the expense of the defendant, the conditions which constitute the violation of any provision of this subdivision (H)."

Unless otherwise noted, we use the current statutes throughout this opinion because there are no relevant differences between these statutes and those in effect at the time of the underlying controversy.

motor vehicles regulations. After an administrative hearing, an adjudicator for motor vehicles concluded that DeMilo was in violation of General Statutes § 14-67r, and the Regulations of Connecticut State Agencies regarding motor vehicle junkyards, §§ 14-67q-4, 14-67q-6, 14-67q-7, 14-67q-8 and 14-67q-10.[3] The violations included: the lack of proper fencing around the licensed junkyard area; the stacking of motor vehicles

---

[3] General Statutes § 14-67r provides: "FENCING. Each new location of a motor vehicle junk yard shall be completely surrounded with a solid fence at least eight feet high with a suitable gate which shall be closed and locked except during the working hours of such junk yard. All unregistered motor vehicles, used parts, old iron, metal, glass, paper, and any other material which may have been parts of such vehicles shall be enclosed within this location. Any dismantling of material or cutting up of parts of such vehicles must be carried on within this enclosure."

The relevant Regulations of Connecticut State Agencies regarding motor vehicle junkyards provide: "Sec. 14-67q-4. AREA REQUIRED FOR STORAGE OF SALVAGE MOTOR VEHICLES

"Each licensed motor vehicle junkyard shall maintain a separate and distinct area for the storage of salvage motor vehicles, and such area shall in no case exceed eighty per cent of the licensed and usable area of such yard. . . .

"Sec. 14-67q-6. LOCATION OF STORED VEHICLES

"Each salvage or scrap motor vehicle stored or deposited within a motor vehicle junkyard shall be so located as to be within one hundred feet of an accessible roadway or driveway with a minimum width of twelve feet, such driveway or roadway being connected to a public road or highway.

"Sec. 14-67q-7. PROXIMITY TO OTHER VEHICLES

"With the exception of a motor vehicle placed or stored on top of another, no scrap or salvage motor vehicle shall be located closer than one foot to an adjacent vehicle, provided when scrap or salvage motor vehicles are deposited or stored in a continuous line not to exceed four passenger motor vehicles in length, it shall be necessary only to maintain the one-foot separation between the sides of such vehicles.

"Sec. 14-67q-8. LOCATION OF VEHICLES PURCHASED FOR SCRAP

"Each motor vehicle purchased or obtained for scrap shall be deposited or stored in the portion of the yard reserved for the processing of vehicles. . . .

"Sec. 14-67q-10. STACKING OF OTHER MOTOR VEHICLES

"Stacking of motor vehicles, other than processed motor vehicles, at a height greater than two vehicles is prohibited."

at a height greater than allowed; a licensed junkyard area filled beyond the 80 percent maximum; and the location of salvage motor vehicles outside the licensed junkyard area. The adjudicator suspended DeMilo's junkyard license and imposed a civil penalty of $1000 on DeMilo.

On February 17, 1987, DeMilo appealed from the administrative decision to the Superior Court. DeMilo claimed that the decision was arbitrary, unreasonable and an abuse of discretion in that: (1) the commissioner had selectively enforced motor vehicles' regulations thereby violating DeMilo's right to equal protection; (2) § 14-67r had been illegally applied; (3) the statute empowering the commissioner to promulgate regulations was unconstitutionally vague; (4) the commissioner had exceeded his authority in promulgating regulations; and (5) the commissioner was estopped from enforcing the regulations because he had known about the violations for some time before instituting an action. The dismissal of DeMilo's appeal by the trial court, *Susco, J.*, is the subject of another case decided this same date. See *DeMilo & Co.* v. *Commissioner of Motor Vehicles*, 233 Conn. 281, 659 A.2d 162 (1995).

Subsequently, on February 26, 1987, the commissioner brought an action, pursuant to § 14-67v,[4] to enjoin DeMilo from operating or maintaining a motor vehicle junkyard in violation of motor vehicles regulations.[5] After a hearing held that same day, a temporary injunction was issued by the court, *Aronson, J.*, ordering DeMilo immediately to "take steps to remove all unregistered motor vehicles, used parts, tires and other materials . . . from the property outside its fenced-

---

[4] See footnote 2.

[5] The regulations cited by motor vehicles were the same regulations at issue in the administrative proceeding. See footnote 3.

in motor vehicle junkyard location . . . ." The court also scheduled further hearings to be held on the application.

DeMilo made the same claims as special defenses to the commissioner's application for an injunction as those it had advanced in its appeal in the administrative action before Judge Susco, i.e., selective enforcement of the regulations, illegal application of § 14-67r, vagueness of the regulations, the commissioner's exceeding his authority in promulgating the regulations and estoppel. DeMilo stipulated, however, that not all of the violations that had existed at the time of the administrative hearing before the motor vehicles adjudicator had been abated. After a plenary hearing on motor vehicles' application for an injunction, the court, *Ripley, J.*, concluded that DeMilo had violated various statutes and regulations and had created a public nuisance in violation of § 14-67v. The court found, among other things, that DeMilo was conducting motor vehicle junkyard operations outside the area licensed by motor vehicles for such use. The court also rejected each of DeMilo's special defenses.

As a result, the court rendered a judgment (Ripley judgment) *ordering* that the commissioner be "authorized to immediately enter the unlicensed areas . . . to immediately eliminate, at the expense of the defendant, the conditions which constitute the violation . . . ." The court further *ordered* that DeMilo "immediately post a bond with the Court in the amount of One Hundred Thousand Dollars ($100,000.00) to cover the cost of immediately eliminating the conditions which constitute the violation . . . ."

On June 10, 1987, two days after the Ripley judgment had been rendered, transportation, acting as the agent of the commissioner, began the removal of junked vehicles and other debris from the unlicensed areas of

DeMilo's land pursuant to the court's order. By June 18, 1987, two large piles of the removed material had been accumulated on a temporary nearby site owned by the city of Hartford. Transportation then resumed work on its original project of reconstructing Interstate 91, and, with the permission of the city, left the accumulated piles of debris on the city's property. DeMilo complied with the provision of the court order requiring it to post a bond of $100,000 to cover the cost of remedying the violations. On September 9, 1987, DeMilo posted the bond, secured by a mortgage on its remaining Hartford property. The condition of the bond was that DeMilo pay to the state "the just and full sum to comply with the referenced court order."

On March 30, 1988, the commissioner contracted with Essex Auto Salvage, Inc., to remove the piles of junked vehicles and debris from the city's property. The work was completed between April 11 and 28, 1988. The commissioner billed DeMilo for the cost of the April, 1988 removal. DeMilo has refused to compensate the state for that cost.

Before the April, 1988 removal work had commenced, DeMilo appealed from the judgment rendered by Judge Ripley to the Appellate Court, claiming that the trial court improperly had: (1) concluded that the condition of its property constituted a public nuisance; (2) authorized the commissioner to "crush and destroy" the junked vehicles rather than simply remove them; (3) concluded that DeMilo had violated General Statutes § 14-67i;[6] and (4) concluded that violations existed

[6] General Statutes § 14-67i provides: "CERTIFICATE OF APPROVAL OF LOCATION; LICENSE REQUIRED. EXCEPTIONS. (a) No person, firm or corporation shall establish, operate or maintain a motor vehicle junk yard or motor vehicle junk business unless a certificate of approval of the location to be used therefor has been procured from the selectmen of the town, the mayor of the city or the warden of the borough wherein such yard or business

on areas unlicensed by motor vehicles for a motor vehicle junkyard business. After a hearing, on February 4, 1988, the Appellate Court, sua sponte, dismissed the appeal as moot. We denied DeMilo's petition for certification for review of the Appellate Court's dismissal. *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 207 Conn. 809, 541 A.2d 1238 (1988). Our denial occurred after the commissioner had represented to this court, in its opposition to the petition for certification, that the order contained in the judgment on appeal had been

---

is located or is proposed to be located, except that, in any city or town having a zoning commission, such certificate shall be procured from the zoning commission, certifying that such location is suitable for the proposed use, consideration being given to the factors specified in section 14-67k, nor unless a license to establish or maintain such a yard or such a business has been obtained from the commissioner of motor vehicles as provided in section 14-67l.

"(b) The provisions of this section shall not apply to: (1) Any public agency, as defined in section 7-339a, which acquires, collects, dismantles or disposes of junk or abandoned motor vehicles pursuant to a program of solid waste disposal, in accordance with the provisions of chapter 446d and the regulations of Connecticut state agencies, concerning the operation of motor vehicle junk yards, provided this exemption shall not apply to any public agency which sells or distributes or exchanges for profit motor vehicle parts for reuse as such, and provided further, such public agency shall designate an employee to maintain accurate records of all motor vehicles received and processed. Such records shall include the make, year, serial number and, if available, the name and address of the person from whom each vehicle was received. A list containing the make, year and serial number of each such motor vehicle shall be sent to the commissioner of motor vehicles on or before the last day of the month following the month during which such disposal occurred; or (2) any intermediate processor, operating at a licensed facility, pursuant to subsection (a) of this section. 'Intermediate processor' means any person, firm or corporation which dismantles, crushes or otherwise conditions junk or abandoned motor vehicles or parts thereof for delivery to a scrap metal processor as defined in section 14-67w, or for disposal in any other manner permitted by law, and which does not sell automobile parts for reuse as parts; provided all such junk or abandoned motor vehicles or parts thereof shall, at the time of such dismantling, crushing or conditioning, be owned by or in the custody of, and located on premises of or maintained by the holder of a motor vehicle junk yard license issued pursuant to section 14-67l, or by a public agency exempted under this subsection."

almost completely executed, in that the junked vehicles and other debris had been removed from the unlicensed areas. Further, the commissioner represented that DeMilo had not requested any practical relief from the order, nor could the court furnish any.

On January 19, 1989, the commissioner brought this action in the Superior Court to enforce Judge Ripley's order. The complaint alleged that the commissioner had complied with the order by having a contractor dispose of the junked vehicles and other debris on the unlicensed property. In count one of the complaint, the commissioner requested monetary damages because DeMilo had failed to reimburse him for the expense of abating the public nuisance, as ordered by Judge Ripley. In count two of the complaint, the commissioner sought to foreclose his mortgage on DeMilo's property, obtained when DeMilo, in compliance with the Ripley judgment, had posted the bond that was secured by a mortgage deed on its remaining real estate in Hartford.

DeMilo filed four special defenses to the commissioner's complaint, claiming that it should not have to pay the costs of removal because the commissioner had removed materials from the property: (1) in violation of the laws and regulations governing both motor vehicles and the department of environmental protection; (2) without competitive bidding as required by General Statutes (Rev. to 1993) § 4a-57;[7] (3) from areas not

[7] General Statutes (Rev. to 1993) § 4a-57 provides in relevant part: "COMPETITIVE BIDS FOR PURCHASES AND CONTRACTS. SALES. WAIVER. COMPETITIVE NEGOTIATIONS. (a) All purchases of, and contracts for, supplies, materials, equipment and contractual services, except gas, water and electric light and power services, and purchases and contracts made pursuant to the provisions of subsection (c) of this section shall be based, when possible, on competitive bids. Any personal property which has become obsolete, unserviceable or unusable may be sold (1) on the basis of competitive bids, (2) at public auction or (3) at a retail store owned by the state and open to the public. The commissioner shall solicit competitive bids by sending notice to prospective suppliers and by posting notice on a public bulletin

covered by the judgment; and (4) in violation of an auto-

board in his office. Such notice shall contain a notice of state contract requirements pursuant to section 4a-60. Each bid shall be kept sealed until opened publicly at the time stated in the notice soliciting such bid. If the amount of the expenditure or sale is estimated to exceed ten thousand dollars, competitive bids shall be solicited by public notice inserted at least once in not fewer than three daily newspapers published in the state, and at least five calendar days before the final date of submitting bids. All purchases or sales of ten thousand dollars or less in amount shall be made in the open market, but shall, when possible, be based on at least three competitive quotations.

"(b) (1) Any personal property to be sold under section 4a-52 and subsection (a) of this section on the basis of competitive bids shall be offered for sale to municipalities, transit districts and the public at the same time, provided the commissioner of administrative services shall sell the property to the municipality or transit district which submits the highest bid. If no municipality or transit district submits a bid the commissioner shall sell the property to the highest public bidder. Any personal property to be sold under said section and subsection at a public auction shall be offered first to municipalities and transit districts and sold to the municipality or transit district which makes the highest bid, provided the commissioner may order that any or all bids may be rejected when, in his opinion, the best interest of the state would be served thereby. If no municipality or transit district makes a bid, or if all bids are rejected, the commissioner shall solicit bids from the public at the same public auction and shall sell the property to the highest public bidder. (2) If the commissioner is unable to sell any property to the highest public bidder pursuant to subdivision (1) of this subsection, the commissioner shall offer the property for sale to the public at a retail store owned by the state. If the commissioner is unable to sell any property at such store, he shall donate the property to a charitable or other nonprofit organization. If the commissioner is unable to donate the property to such an organization, he shall dispose of the property.

"(c) The commissioner may, at his discretion, waive the requirement of competitive bidding in the case of minor nonrecurring and emergency purchases of six hundred dollars or less in amount. The commissioner may use competitive negotiation to purchase or contract for data processing equipment, programs or services having a cost of twenty thousand dollars or less or advertising space or time after making a written determination, including the reasons therefor, that such action is in the best interest of the state. The commissioner shall adopt regulations, in accordance with the provisions of chapter 54, establishing (1) objective standards for determining when such competitive negotiation may be used instead of competitive bidding, including whether the character of such data processing equipment, programs or services or advertising space or time is more impor-

matic stay of proceedings[8] resulting from the appeal to the Appellate Court of the judgment. The fourth special defense included an allegation that the Ripley judgment was "erroneous."[9] Judge Shea rejected each of DeMilo's defenses, and rendered judgment for the commissioner on both counts of his complaint.

tant than their relative cost, (2) procedures to be followed in making purchases, contracts or sales not subject to the competitive bid requirements of this section, including but not limited to, criteria which shall be considered in making purchases by competitive negotiation and the weight which shall be assigned to each such criterion and (3) standards and procedures under which additional purchases may be made on a limited basis under existing contracts."

[8] On appeal, DeMilo does not challenge the finding of Judge Shea that there had been no automatic stay of the judgment rendered by Judge Ripley. General Statutes § 52-477 provides that an application for such a stay is necessary in the case of an appeal from a judgment for a permanent injunction, such as in this case. The judgment had been rendered pursuant to § 14-67v, which provides for injunctive relief. DeMilo had applied for a stay of the judgment, but that application was denied by Judge Ripley on June 10, 1987.

[9] The special defenses provide in relevant part:

"FIRST SPECIAL DEFENSE:

"1. The moving of materials by the plaintiff or for the plaintiff was performed without compliance with the Department of Motor Vehicles and Department of Environmental Protection Laws . . . .

"2. As a result, the defendant should not be charged with the cost of removal.

"SECOND SPECIAL DEFENSE:

"1. The costs of the move secured by the mortgage [were] incurred without competitive bidding and were not reasonable or just.

"2. As a result, the defendant should not be responsible to pay the costs claimed.

"THIRD SPECIAL DEFENSE:

"1. The plaintiff moved the materials from areas not covered by the court order referred to in the complaint.

"2. As a result, the defendant should not be held responsible for the costs claimed.

"FOURTH SPECIAL DEFENSE:

"1. The plaintiff moved the property in violation of the automatic stay [of] proceedings.

"2. As a result, the defendant's appeal from the order was held to be moot.

"3. The order was erroneous.

"4. As a result, the defendant should not have to pay the costs of removal and should be equitably [e]stopped to make the claim."

DeMilo's seven claims on appeal can be encapsulated into four. First, DeMilo questions the validity of the judgment of Judge Ripley as the basis of the commissioner's claims in the action that is the subject of this appeal, because the appeal from that judgment had been dismissed as moot by the Appellate Court. Second, DeMilo claims that the trial court improperly allowed the commissioner to recover under a theory that he had not pleaded. Third, DeMilo claims that the trial court improperly concluded that the amount claimed by the commissioner for the cost of removal was reasonable, when the commissioner had not complied with competitive bidding procedures, purportedly required by § 4a-57.[10] See footnote 7. Finally, DeMilo claims that the trial court improperly ratified the commissioner's removal of materials from areas not anticipated in the order.

I

DeMilo first claims that the commissioner should be equitably estopped from enforcing Judge Ripley's judgment because the commissioner had been successful in his arguments both to the Appellate Court and to this court, which resulted in the dismissal as moot of DeMilo's appeal from that judgment and a denial of certification.[11] DeMilo argues that it was prejudiced

[10] In its brief, DeMilo separated its third claim into four separate claims of error. Each claim, however, is an aspect of the same argument—that the trial court improperly concluded that the commissioner's damages were reasonable. We, therefore, will address these contentions as a single claim.

[11] In its opposition to DeMilo's petition for certification to this court, the commissioner stated: "In this Appeal, the Injunctive Order has been almost completely executed, the personal property of DeMilo has been removed and disposed of . . . . DeMilo testified it would not remove the personalty from the unlicensed areas and therefore effectively abandoned any claim to that personal property, and a major portion of the realty involved is now a roadway." DeMilo argues that this statement caused the appeal to be dismissed as moot. There is nothing in the record to indicate why the Appellate Court had dismissed the appeal as moot, except its one sentence order, stating: "After a hearing on the question whether the appeal should be dis-

because it could not challenge the Ripley judgment on appeal, and, therefore, it is unenforceable. DeMilo also claims that the Ripley judgment was ineffectual once the appeal had been dismissed as moot. We are not persuaded.

A

"Claim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. *State* v. *Ellis*, 197 Conn. 436, 466, 497 A.2d 974 (1985)." *Scalzo* v. *Danbury*, 224 Conn. 124, 127, 617 A.2d 440 (1992). "Under Connecticut law, '[c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an *opportunity* to litigate.' (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 296, 596 A.2d 414 (1991)." (Emphasis added.) *Mulligan* v. *Rioux*, 229 Conn. 716, 751, 643 A.2d 1226 (1994).

missed as moot, the Appellate Court, suo motu, finds that the appeal should be, and hereby is, dismissed." It appears that, although DeMilo had an opportunity to argue to the Appellate Court how it could be afforded practical relief in order to avoid a dismissal, it failed to do so. Without deciding whether it was misleading to indicate to this court in March, 1988, that the property had been "removed and disposed of" when the final removal occurred in April, 1988, we note that the statement made to this court could not have been the reason for the Appellate Court's dismissal. The issue here must focus on the fact that the appeal was dismissed as moot, not on the reasoning of the Appellate Court when it dismissed the appeal as moot.

Judge Shea concluded that "[b]ecause the defendant's appeal from [Judge Ripley's judgment] was dismissed for mootness by the Appellate Court without a review of the merits . . . the commissioner cannot simply rely on that judgment as precluding by way of collateral estoppel the relitigation of issues relevant to this suit to recover the expenses of eliminating the violations of the junkyard statutes and regulations that had resulted in the issuance of the injunction." For this proposition, the court adopted § 28 (1) of the Restatement (Second) of Judgments, which provides: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . ." In other words, we will not apply collateral estoppel, where it would otherwise be applicable, if the party who was unsuccessful in the initial action is barred, as a matter of law, from obtaining appellate review of the initial action. "Such cases can arise, for example, because the controversy has become moot . . . ." Id., § 28, comment (a).

While § 28 (1) of the Restatement previously has not been adopted expressly by this court, it was cited with approval in *Convalescent Center of Bloomfield, Inc.* v. *Dept. of Income Maintenance*, 208 Conn. 187, 197, 544 A.2d 604 (1988). In *Convalescent Center of Bloomfield, Inc.*, we considered whether access to judicial review was a necessary precondition to permit an administrative decision to command collateral estoppel effect. We concluded that "without the availability of judicial review, neither the decision of an administrative agency *nor that of a court* is ordinarily entitled to be accorded preclusive effect in further litigation." (Emphasis

added.) Id., 201. We are persuaded that the same logic, embodied in § 28 (1) of the Restatement, should apply to the case before us. See also *Sena* v. *Commonwealth*, 417 Mass. 250, 260, 629 N.E.2d 986 (1994) ("[w]e now state conclusively that for collateral estoppel to preclude litigation of an issue, there must have been available some avenue for review of the prior ruling on the issue"); *Murray International* v. *Graham*, 315 Md. 543, 552-54, 555 A.2d 502 (1989) (adopting Restatement [Second], Judgments § 28 [1]). Because DeMilo was unable to obtain review of the Ripley judgment, from which the appeal was dismissed as moot, it should not be barred from relitigating the factual and legal issues decided in rendering that judgment. DeMilo, therefore, was not precluded from relitigating, in a subsequent action, the same issues that had been raised before Judge Ripley.

B

The question remains, however, as to what legal effect, if any, the Ripley judgment should have after the dismissal of DeMilo's appeal from that judgment. This is an issue of first impression in Connecticut. As a matter of federal law, federal courts have developed a principle of vacatur under which the preclusive effect of a judgment the appeal from which has been dismissed as moot depends on whether that judgment has been dismissed or vacated expressly. See *United States Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, U.S. , 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994); *United States* v. *Munsingwear*, 340 U.S. 36, 71 S. Ct. 104, 95 L. Ed. 36 (1950); 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2d Ed. 1984 and Sup. 1995) § 3533.10. The rationale of the federal rule of vacatur is that it would be inequitable to impose on a party the adverse res judicata effects of a district court judgment when that party was denied the opportunity for appellate review through no fault

of its own. *Associated General Contractors of Connecticut, Inc.* v. *New Haven,* 41 F.3d 62, 67 (2d Cir. 1994). The federal courts, however, require the unsuccessful party to make a motion to vacate the adverse judgment. *United States* v. *Munsingwear,* supra, 41. It is assumed under the federal rule that, absent vacatur, the judgment the appeal from which was dismissed as moot, would have a collateral effect with respect to the issues decided by that judgment.

The rationale that it would be inequitable to impose on a party the adverse collateral effects of a judgment when that party was denied the opportunity for appellate review is inapplicable, however, if, as we conclude, a judgment the appeal from which was dismissed as moot has no collateral estoppel effect as to the issues decided by that judgment. 1 Restatement (Second), Judgments § 28 (1) (1982). While the federal procedure is only parallel to the Restatement approach, the federal procedure and § 28 (1) of the Restatement (Second) merge at the same point. That point involves the question presented in this appeal, i.e., what is the effect of a trial court judgment, the appeal from which has been dismissed as moot, if the unsuccessful party in the trial court has failed to move to vacate the trial court judgment, and the party who was successful in the trial court has brought an action to enforce the judgment.

The approach taken by the Restatement (Second) of Judgments postulates that the judgment carries no collateral estoppel effect if the appeal was dismissed as moot. It does not, however, state that the judgment is void. Moreover, because the federal practice requires a motion to vacate a trial court judgment after the appeal was dismissed as moot, it follows that a trial court judgment is not void once an appeal from the judgment has been dismissed as moot. If the judgment were deemed to be void mechanically, there would be

no need to require a party to move for vacatur. We conclude, therefore, that a trial court judgment the appeal from which subsequently is dismissed as moot is not void, but is voidable.[12]

Once the appeal from a trial court judgment has been dismissed as moot, one of two things could happen if the parties chose to continue litigation. The unsuccessful party in the initial action could bring a direct attack on the judgment by a motion to set it aside. Rather than automatic vacatur in that instance, however, we will adopt the balancing approach employed by the United States Supreme Court in *United States Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, supra, 115 S. Ct. 386, as well as by the Ninth Circuit Court of Appeals in *Ringsby Truck Lines, Inc.* v. *Western Conference of Teamsters*, 686 F.2d 720, 722 (1982). Under *Ringsby Truck Lines, Inc.*, upon motion of a party, an appellate court must remand the question of vacatur to the lower court to "balance . . . the consequences and attendant hardships . . . between the competing values of finality of judgment and right to relitigation of unreviewed disputes . . . ." Id. A court considering a motion to set aside a judgment, the appeal from which has been dismissed as moot, must determine if the remedy of setting the judgment aside is warranted.

Alternatively, the prevailing party in the initial action may bring an action to enforce the judgment, once the appeal from that judgment has been dismissed by an

---

[12] We have stated that "[v]oidable judgments are not subject to collateral attack." *D'Occhio* v. *Connecticut Real Estate Commission*, 189 Conn. 162, 173, 455 A.2d 833 (1983); see also *Meinket* v. *Levinson*, 193 Conn. 110, 113–14, 474 A.2d 454 (1984); *Jensen* v. *Nationwide Mutual Ins. Co.*, 158 Conn. 251, 260, 259 A.2d 598 (1969); *Holly* v. *McDonald*, 154 Conn. 228, 234, 224 A.2d 727 (1966); *Rathkopf* v. *Pearson*, 148 Conn. 260, 265, 170 A.2d 135 (1961). This statement, however, has not been made in the context of a collateral attack on a judgment that could not be reviewed because it was dismissed on appeal as moot. Sound jurisprudential policy requires an exception in such a case.

appellate court as moot. That is the present case. Here, the commissioner brought suit against DeMilo to enforce the Ripley judgment after the appeal from the Ripley judgment had been dismissed as moot. The basis of the commissioner's two count complaint—seeking damages for removal of the public nuisance of the junked vehicles and the foreclosure on the security for the removal bond—was the Ripley judgment, which ordered that DeMilo be liable for the costs of abating the public nuisance and be required to post a bond to ensure payment. DeMilo filed several special defenses to this action. See footnote 9. Only its fourth special defense, however, is relevant to our discussion. In its fourth special defense, DeMilo alleged that the commissioner should be equitably estopped from enforcing the Ripley judgment because the commissioner had removed DeMilo's inventory in violation of an automatic stay of proceedings[13] and, as a result of the removal, the appeal from the judgment was held to be moot. DeMilo further alleged that "[t]he order was erroneous." Since the Ripley judgment, as a result of the dismissal of the appeal, had no preclusive effect, DeMilo not only could have, but should have, advanced any and all collateral attacks on the merits of the order contained in the Ripley judgment in its special defenses to the commissioner's complaint. Furthermore, by pleading in its fourth special defense that the Ripley order "was erroneous," DeMilo properly alleged an attack on the merits of the order.

Trial court orders arising from a judgment the appeal from which was dismissed as moot carry a rebuttable presumption of validity. " 'Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court con-

---

[13] See footnote 8.

cludes that the public interest would be served by a vacatur.' *Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *United States Philips Corp.*, 510 U.S. 27, 40 [114 S. Ct. 425, 126 L. Ed. 2d 396] (1993) (Stevens, J., dissenting)." *United States Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, supra, 115 S. Ct. 392. The party who has suffered an adverse ruling in the trial court, therefore, has the burden to prove that the initial judgment is invalid. Unless that party satisfies that burden, the initial judgment should remain viable. "It is the petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." Id.

Judge Shea found that "the commissioner . . . presented testimony and other evidence to prove that the defendant was violating the statutes and regulations concerning junkyards." After considering the merits of the Ripley judgment, Judge Shea concluded that "[t]he evidence is overwhelming that the defendant was operating a motor vehicle junkyard on unlicensed property" in violation of § 14-67v, and enforced the judgment. DeMilo's attack on the merits of the order contained in the Ripley judgment in its fourth special defense, therefore, failed because DeMilo failed in its burden to satisfy the court that "the order was erroneous." We conclude, consequently, that the trial court properly found that the Ripley judgment remained viable and that the commissioner could enforce that judgment in the subsequent action which is the subject of this appeal.

II

DeMilo next claims that the commissioner was allowed to recover on a theory that he had not pleaded. In the first count of his complaint, the commissioner alleged that he had paid the cost of the removal of the

junked vehicles and auto parts, the presence of which constituted the violation of § 14-67v, and that DeMilo had failed to reimburse him for his expenditures as required by the Ripley judgment. DeMilo argues that because Judge Shea found that the commissioner "was entitled to reimbursement regardless of Judge Ripley's decision," DeMilo was prejudiced because under the complaint it should not have to "counter nonexistent allegations that it was violating General Statutes § 14-67v." We disagree with DeMilo's contention for two reasons.

First, the trial court did not find that the commissioner was entitled to reimbursement "regardless of" the Ripley judgment. Although the commissioner incorrectly claimed at trial that the Ripley judgment had collateral estoppel effect, the trial court found that "the commissioner did not rely wholly upon the doctrine of collateral estoppel, but presented testimony and other evidence to prove that the defendant was violating the statutes and regulations concerning junkyards." As discussed in part I B of this opinion, the Ripley judgment was presumptively valid, subject to a showing of invalidity by DeMilo. Because DeMilo pleaded in its fourth special defense that the Ripley order was erroneous, it put the merits of that order in issue. The judgment of Judge Shea enforced the Ripley judgment, based upon the court's independent conclusion that DeMilo "was operating its motor vehicle junkyard in violation of the regulatory statutes . . . ." Thus, instead of concluding, as DeMilo contends, that the commissioner was entitled to reimbursement *regardless of* the Ripley judgment, the trial court determined that the commissioner was entitled to reimbursement *because of* that judgment, since it was based on correct factual findings and remained viable.

Second, we disagree with DeMilo's claim that there were no allegations before the trial court in this case

that it was violating § 14-67v. DeMilo mounted a collateral attack on the merits of the Ripley judgment by alleging in its fourth special defense that the judgment was erroneous and DeMilo admits that "[b]oth parties addressed the issue in testimony . . . ." See footnote 9. The fact that DeMilo was unable to persuade the trial court on the merits of its fourth special defense does not mean that the violations underlying the Ripley judgment were not in issue before the trial court. Indeed, quite the opposite is true. Because the merits of the Ripley judgment were considered in this case at the request of DeMilo, the allegations underlying that order clearly were in issue at trial.

DeMilo cites only *Willametz* v. *Guida-Seibert Dairy Co.*, 157 Conn. 295, 254 A.2d 473 (1968), as authority for the proposition that the commissioner recovered on a theory that he had not pleaded. In *Willametz*, we stated that " '[i]t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . .' " Id., 302. We do not disagree with this statement; it does not, however, afford DeMilo its requested relief.

" 'A variance is a departure of the proof from the facts as alleged. Not every variance, however, is a fatal one since immaterial variances are disregarded under our practice. Practice Book § [178] . . . . Only material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment. . . .' *Strimiska* v. *Yates*, 158 Conn. 179, 183, 257 A.2d 814 (1969); *Web Press Services Corporation* v. *New London Motors, Inc.*, 203 Conn. 342, 359–60, 525 A.2d 57 (1987) . . . *O'Connor* v. *Dory Corporation*, 174 Conn. 65, 68, 381 A.2d 559 (1977)." *Tedesco* v. *Stamford*, 215 Conn. 450, 461, 576 A.2d 1273 (1990), on remand, 24

Conn. App. 377, 588 A.2d 656 (1991), rev'd, 222 Conn. 233, 610 A.2d 574 (1992).[14]

A variance is material only if the defendant is prejudiced by it. "We cannot say that the defendant was prejudiced in maintaining his defense on the merits, or that he was surprised by the plaintiff's proof, or that he was misled by the allegations in the complaint. For these reasons, the variance was not a material one." *Strimiska* v. *Yates*, supra, 158 Conn. 184. This is particularly true in the present case, where DeMilo's fourth special defense invited the commissioner to present evidence regarding the merits of the Ripley judgment. DeMilo could not have been surprised or misled by the presentation of evidence by the commissioner to rebut DeMilo's fourth special defense, since that evidence was precipitated by DeMilo's own allegation that the Ripley judgment was erroneous. We conclude, therefore, that DeMilo was not prejudiced by the trial court's consideration of evidence of DeMilo's statutory and regulatory violations, since that evidence was proper to rebut DeMilo's fourth special defense.

### III

DeMilo's third claim is that the trial court improperly concluded that the amount claimed by the commissioner for the cost of removal of DeMilo's inventory was reasonable, when the commissioner had not complied with competitive bidding procedures required by

---

[14] Practice Book § 178 provides: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. If such allegation was made without reasonable excuse, or if the adverse party was actually misled thereby to his prejudice in maintaining his action or defense upon the merits, or if such amendment requires postponement of the trial or additional expense to the adverse party and this is shown to the satisfaction of the court, such amendment shall be made only upon payment of costs or upon such terms as the court may deem proper; but in any other case, without costs. Immaterial variances shall be wholly disregarded."

§ 4a-57. See footnotes 7 and 10. The trial court found that the commissioner did not comply with the requirements of § 4a-57 in obtaining bids for the removal of materials in compliance with the Ripley judgment. The commissioner "did obtain three competitive bids, but did not fulfill the statutory requirements for 'notice to prospective suppliers,' posting such notice, sealed bids, public opening, and advertising when the amount of the purchase exceeds $10,000." See General Statutes § 4a-57. Because the commissioner did not proceed according to the statute, DeMilo argues that the commissioner should not be allowed to recover on his complaint. We disagree.

The trial court acknowledged that the competitive bidding statutes are mandatory and that they are intended to protect the public purse. See *Kelley* v. *Torrington*, 80 Conn. 378, 382, 68 A. 855 (1908). DeMilo agrees that the statute's "purpose is essential to protect the public." It contends, however, that by not allowing the commissioner to recover, the court would encourage compliance with the statute in the future, and would "protect [DeMilo] who is a member of the public." DeMilo has focused on itself, and not on the public, as the intended beneficiary of the statute.

The obvious purpose of § 4a-57 is to protect the public from collusive contracts that may result in the overpayment of public funds. A violation of the statute, however, does not result in a forfeiture of the commissioner's right, pursuant to the Ripley judgment, to recover the reasonable cost of removal of the conditions constituting a public nuisance on DeMilo's property.[15] To construe the violation of a statute intended

---

[15] The proper statutory remedy for a violation of § 4a-57 is found in General Statutes § 4a-65, which provides: "UNLAWFUL PURCHASES. When any state agency purchases or contracts for any supplies, materials, equipment or contractual services contrary to the provisions of this chapter or the regulations promulgated in pursuance thereof, such order or contract shall be

to conserve public funds to result in the loss of reimbursement of those funds would be, as the trial court found, "nonsensical."

The court properly considered a violation of § 4a-57 to be of some relevance to the determination of reasonable cost, but determined that it was not dispositive. There was evidence presented upon which the court could have relied to conclude that the cost of removal was reasonable. Although the bids received were not in compliance with § 4a-57, the fact that the commissioner did contract with the contractor who had submitted the lowest of three bids is some evidence of reasonableness.[16] Moreover, payments actually made for work performed "is ordinarily some evidence of its value." *Devine Hallenbeck Co.* v. *Autoyre Co.*, 113 Conn. 97, 101, 154 A. 170 (1931). "[P]roof of the expenses paid . . . affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the subject-matter, its reasonableness will be presumed." (Internal quotation marks omitted.) *Fuessenich* v. *DiNardo*, 195 Conn. 144, 156, 487 A.2d 514 (1985). DeMilo has failed to present credible evidence to rebut that presumption.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logi-

---

void and of no effect. The administrative head of such agency shall be personally liable for the costs of such order or contract and, if already paid for out of state funds, the amount thereof may be recovered from such administrative head by the state in a civil action." Because the issue of § 4a-65 is not here presented, we decline to address its possible implications in this case.

[16] The bids received were for $585,000, $230,000 and $224,900. The commissioner contracted with Essex Auto Salvage, Inc., which had bid $224,900.

cally correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). DeMilo, therefore, had the burden to demonstrate that the trial court's factual finding of the reasonableness of the cost of removal was clearly erroneous. On the basis of our review of the record, we conclude that DeMilo has failed to do so.

## IV

Finally, DeMilo claims that the trial court improperly ratified the commissioner's removal of materials from areas not anticipated in the Ripley judgment. This claim is encompassed by the third special defense raised by DeMilo before the trial court. See footnote 9. DeMilo does not dispute that, according to the Ripley judgment, the commissioner could have moved the materials that had been removed from DeMilo's property in June, 1987, to property owned by the city of Hartford, but argues that the April, 1988 removal of vehicles and debris from the city's property to another destination was beyond the scope of the Ripley judgment. This argument is without merit.

DeMilo bases its argument on the language of the order in the Ripley judgment, which provides that the commissioner or its agents are authorized "to *immediately* enter the unlicensed areas . . . to *immediately* eliminate, at the expense of the Defendant, the conditions which constitute the violation . . . ." (Emphasis added.) Because the April, 1988 removal project was not *immediate*, DeMilo contends that it should not be

liable for the costs of removal. The commissioner did not claim reimbursement from DeMilo for the expense of moving the junked vehicles to the temporary storage location in June, 1987. As the trial court found, DeMilo seeks to isolate the work performed in April, 1988, for which it was assessed, from the circumstances that made such work necessary. Such an interpretation would eviscerate the Ripley judgment. The trial court properly concluded that the "removal and disposition of the defendant's junk that had been stored temporarily on city property was an integral part of the operation authorized by the court . . . ."

DeMilo also contends that the commissioner did not prove that the material that had been stored on the city's property had ever been owned by DeMilo. DeMilo concedes that the commissioner removed its material in June, 1987, from the unlicensed areas covered in the Ripley judgment and placed it in piles on the city's property. DeMilo argues, however, that the commissioner failed to prove that the material that was removed ten months later, in April, 1988, from the city's property contained the same items placed on the city's property in June, 1987. This argument is implausible.

Photographs of the junk both before and after the initial move were admitted as full exhibits before the trial court. Additionally, Howard Koenig, an inspector for the dealers and repairers division of motor vehicles, testified that he had supervised the removal of vehicles from the unlicensed area to the city's property in compliance with the Ripley judgment. There is no evidence on the record that the piles removed from the city's property in April, 1988, did not contain the same items placed there by transportation in June, 1987. Instead of meeting its burden of proving that the trial court's finding was clearly erroneous; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 181 Conn. 221–22; DeMilo simply has stated that the finding was made

"in relevant part without evidence." We are not persuaded that DeMilo has demonstrated that the trial court's finding that there was "ample evidence that all of the items removed were situated on the unlicensed portions of the property owned or leased by the defendant," was clearly erroneous.

The judgment is affirmed and the case is remanded to the trial court to set new law days.

In this opinion the other justices concurred.

