[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for (1) defamation, (also known as ("libel"), (2) intentional infliction of emotional distress and (3) portrayal of the plaintiff in a false light in the public eye brought in twelve counts in regard to two separate publications in the defendant, Glastonbury Citizen, Inc., of which the defendant, James Hallas, was and is the publisher. The three specific torts alleged as aforesaid were brought against each defendant for each of two separate publications. The plaintiff is Dr. C.J. Mozzochi, (hereinafter also "Mozzochi") and the defendants are James Hallas, (hereafter also "Hallas") for his statements made and published in the Glastonbury Citizen, (hereafter also the "Citizen") a weekly newspaper published and circulated in the Town of Glastonbury. Since the statements were published in the Citizen, the Citizen is also a named defendant.
This lawsuit was tried to the court on October 9, 14, 15, 16 and 17, 1997. At the conclusion of the evidence, the court ordered simultaneous briefs from both parties within two weeks from the availability of the trial transcript and two weeks thereafter for reply briefs. Both parties filed initial briefs, but no one filed a reply brief which was due on or before December 22, 1997. The only tort mentioned in Mozzochi's brief
was defamation/libel. Intentional infliction of emotional distress and portrayal of Mozzochi in a false light have not been mentioned in said brief. Claims and/or issues not raised in a brief are deemed abandoned. DiMaggio v. Cannon, 165 Conn. 19, 21
(1973). Therefore, the court will concentrate on the claims of defamation/libel.
The court has listened to the parties, reviewed their testimony and reviewed the exhibits in evidence. It has also researched the law that is applicable to this case. Further, the court has assessed the credibility and reliability of Mozzochi CT Page 315 and Hallas as well as other witnesses based upon its observations of their demeanor on the witness stand, the manner in which they answered questions or spoke, (Mozzochi represented himself and, therefore, narrated his portrayal of the facts), the ability of said parties and witnesses to remember or not remember various facts, and in all of this, the way in which they exhibited candor or lack thereof, the consistency or inconsistency of their testimony end whether or not their answers or statements were made on the basis of factual accuracy or mere speculation. Although the court found neither Mozzochi nor Hallas to be dishonest, the court did find Hallas' testimony more credible than that of Mozzochi.
The court makes the following findings:
The allegedly libelous statements of which Mozzochi complained are in an article in The Citizen of October 20, 1994 in which Hallas is quoted, hereafter "Article", and/or "Exhibit 1", hereto; and in an editorial signed by Hallas as publisher in The Citizen of September 14, 1995, hereafter "Editorial" and/or "Exhibit 2" hereto.
The first issue to be considered is whether Mozzochi at thetimes of these publications was a "public figure".
Mozzochi was a candidate for the Glastonbury Town Council in 1993, 1995 and 1997. He was a co-founder of the local Conservative Party in 1993. As for the Editorial, it was published September 14, 1995, a time which was right in the middle of the Glastonbury Town Council election campaign. This court can think of no better example of a public figure than a candidate for public office. A candidate for public office puts his entire life up for review, analysis and comment by the voters who are his/her potential constituents as well as the press which furnishes information and commentary about the candidates to the voters. This can include inquiries into and comments upon his/her educational background, business or employment history, military service, use of illegal drugs, fidelity to one's spouse, incidents of courage or cowardice, incidents of honesty or dishonesty, the reputation he or she enjoys in the community, his or her health; in other words, all facets of his/her life to permit the voters to make an informed decision on the candidates' qualifications for public office. There are many examples of the type of inquiries that take place: Richard Nixon's support fund which produced 1952 the famous "Checkers speech", John Kennedy's CT Page 316 religion in 1960, Senator Thomas Eagleton's psychiatric history when he was a nominee for vice-president in 1972, Senator Gary Hart's alleged infidelity to his wife, and as an example of locking into a candidate's business dealings, you have to look no farther than President Clinton and the attacks on his involvement in the "Whitewater matter", the attacks being made in 1992 when he was a candidate for president and in 1996 when he was a candidate for re-election. There is the incident of a candidate for governor in a neighboring state who claimed to be a Vietnam war veteran and was not. There have been candidates for local office in Connecticut whose business dealings were publicized and criticized in the press. Clearly, Mozzochi was a public figure at the time of the publication of the Editorial on September 14, 1995.
As for the time of the Article of October 20, 1994, Hallas' comments were made in reaction to a law suit brought by Mozzochi against Hallas. By bringing the lawsuit in a public forum, Hartford Superior Court, Mozzochi had to reasonably foresee that the suit would become public knowledge and that its plaintiff, namely, Mozzochi, would because a public figure because of the lawsuit. Hallas was merely commenting upon the suit this plaintiff, public figure, had brought against him. There were other reasons Mozzochi was a public figure on October 20, 1994. Mozzochi wrote and had published a large number of letters to the editor of the Citizen. He had been a candidate for local office in the year prior to 1994. Mozzochi spoke at televised meetings of the Glastonbury Town Council on ten occasions between September 14, 1993 (at which time he was a Council candidate) and September 27, 1994, just prior to the publishing of the Article. His subjects ranged from the town attorney to the Naubec bridge to Sheff v. O'Neill, to criticism of the Citizen for its criticism of Conservative Party candidates. Mozzochi admitted at trial that he is well known throughout Glastonbury for his many mailings to residents of the town. From all of the above, this court concludes that Mozzochi was a public figure[1] at the time of the publication of the Article on October 20, 1994.
"Public figure" has been defined by the United States Supreme Court as ". . . those classified as public figures have thrust themselves to the forefront of particular controversies in order to influence the resolution of the issues involved . . ., they invite attention and comment." Gertz v. Robert Welch. Inc.,418 U.S. 323, 345 (1974), Miles v. Perry, 11 Conn. App. 584, 591
(1987). Mozzochi fit this definition at the times of publication CT Page 317 of the Editorial and the Article.
Under the First Amendment to the United States Constitution a public figure who is allegedly the subject of libelous, defamatory statements must prove that the statements were not only false but were made with actual malice. See the landmark case of New York Times Co. v. Sullivan, 376 U.S. 254; 279-80 (1964) and Milkovich v. Lorain Journal Co., 497 U.S. 1, 14
(1990).
Actual malice in a defamation case does not rest on the motive of the person making the statement. Rather, actual malice requires that the statement, when it is made, be made with actual knowledge that it was false or with reckless disregard of whether it was false. New York Times Co. v. Sullivan, supra, at pgs. 279-80 and Milovich v. Lorain Journal Co., supra, at pg. 14. At a minimum actual malice requires that there ". . . be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."St. Amant v. Thompson, 390 U.S. 727, 731 (1968).
Additionally, a public figure must prove actual malice by clear and convincing evidence in order to prevail in a defamation actions. Milkovich v. Lorain Journal Co., supra, at page 14.
From the totality of the evidence, this court concludes that the plaintiff, a public figure, has failed to sustain his burden of proof that either defendant acted with actual malice. This court finds that no evidence was presented that either defendant entertained serious doubts as to the truth of the publications. On that basis alone, judgment will be entered for the defendants.
The court's inquiry, however, does not stop there. Since the issue has been raised the court must now determine what portion of the statements was opinion and what portion was fact. InMilkovich v. Lorain Journal Co., supra, the United States Supreme Court decided that the First Amendment protects pure opinion but that some statements, even though they express opinion, may be libelous if they contain or imply a statement of probably false fact.
These terms have been defined by the Connecticut Supreme Court in Goodrich v. Waterbury Republican-American, Inc.,188 Conn. 107, 111, 112, 113 (1982). CT Page 318
"A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . In a libel action, such statements of fact usually concern a person's conduct or character . . . An opinion on the other hand, is a personalcomment about another's conduct, qualifications or character that has some basis in fact . . ." Emphasis added.
"This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the fact which he has stated." Emphasis added.
The relevance of the distinction between fact and opinion is that opinion is protected by the First Amendment to the United States Constitution. As stated in Goodrich, supra, at page 117, ". . . mere comment or opinion on public matters, even though defamatory, enjoys the unqualified protection of theFirst Amendment." (Emphasis added) ". . . Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."
"In a civil action for libel, where the protected interest is personal reputation, the rule in Connecticut is that the truth of an allegedly libelous statement of fact provides an absolute defense . . .[2] Contrary to the common law rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial truth need be shown to constitute the justification." Goodrich, supra.
Further, this court has already stated that actual malice must be proved by clear and convincing evidence. It is also true that the falsity of the statement in some material respect must be proved by clear and convincing evidence. Holbrook v. Casazza,204 Conn. 336, 358 (1987).
Using these principles as a guide, the court will now examine the allegedly libelous statements, the Article and then the Editorial.
1. The Article contains a report that Mozzochi had filed CT Page 319 suit against Hallas for libel charging that Hallas had made publications which implied Mozzochi was homosexual and infected with AIDS. The Article further reports Mozzochi's claim in the lawsuit that Hallas' statements are false and malicious and grievously injured Mozzochi's reputation and standing in the community.[3] The Article then goes on to quote Hallas as saying the charges were "malicious, unfounded and completely in character." It is this latter quote which Mozzochi claims is libelous.
At this trial Hallas testified that he consulted with an attorney and was advised that the libel charges against him in that suit will not be sustained. It was after that consultation that Hallas made the statement in the Article of which Mozzochi complains. This court concludes that Hallas' statement is a statement of opinion and not a statement of fact. Whether or not the charges made by Mozzochi in that libel suit are valid or not has not yet been determined and, therefore, is not capable of being known." Therefore, it is not a statement of fact. It is, however, ". . . a personal comment about another's conduct . . .", namely Mozzochi's conduct in bringing the charges described in a lawsuit against Hallas. That comment is opinion.
It is comment on a matter of public interest. Mozzochi was a public figure, his lawsuit was publicly known and reported in a newspaper, and the comment was, therefore, on a matter of public interest. Accordingly, it was not libelous as it is protected by the First Amendment.
2. The Editorial:
To evaluate Mozzochi's claims of libel in this publication, the court is limited to those portions of the Editorial of which Mozzochi complains in his Revised Complaint dated January 31, 1996. It is well settled law that a plaintiff's case is limited to the allegations in his complaint. Cellu Tissue Corp. v. BlakeEquipment Co., 41 Conn. pp. 413, 417 (1996); also seeCommissioner of Motor Vehicles v. Demilo Co., 233 Conn. 254,275 (1995).
The allegations as to the Editorial are contained solely in paragraph 13 of the First Count. Paragraphs 12 and 14 should also be considered. Paragraph 12 describes the lawsuit about which the allegedly libelous statements are made in paragraph 13, and paragraph 14 limits the statements that are actionable to CT Page 320 those quoted in paragraph 13. These paragraphs are repeated in all counts related to the Editorial as to both defendants. As to the Citizen, Mozzochi further alleges the Citizen is equally as guilty because it published Hallas.
The relevant paragraphs are as follows:
 "12. MOZZOCHI filed a suit against HALLAS on October 17, 1994 (NO. CV94-0543226S) in Superior Court in Hartford, Connecticut.
 13. In an editorial in the Glastonbury Citizen dated September 14, 1995 HALLAS stated in reference to the suit against him mentioned in (12) among other things "Now . . . Mr. Mozzochi . . . has filed a nuisance lawsuit . . . As many of you know, this is vintage Mozzochi . . . file a frivolous lawsuit against anyone who disagrees with you."
 14. The statements by Hallas as quoted in (13) misrepresent the actions of MOZZOCHI in order to defame and/or injure him both in his personal reputation as well as in his business reputation, for they imply that MOZZOCHI will file a frivolous lawsuit against anyone who disagrees with him."
The words on which the court will focus are, therefore:
"Now . . . Mr. Mozzochi . . . has filed a nuisance lawsuit . . . As many of you know, this is vintageMozzochi . . . file a frivolous lawsuit against anyone whodisagrees with you."
First, these statements should be reviewed in their context. Mozzochi himself described the publication of September 14, 1995 as an "editorial". It appears on the editorial page of the newspaper, and the publisher of the paper, Hallas, is identified as the author.
This court finds that the word "nuisance" as it is used here is an expression of opinion and not of fact. Using the dictionary (Webster's 1988) definition admitted as defendants' CT Page 321 Exhibit E, nuisance is defined as "an act, condition, thing or person causing trouble, annoyance or inconvenience." It is so defined as a noun. Here, it is used as an adjective describing the noun "lawsuit". Even if one were to add the words to the definition "without foundation," the usage here would still be an expression of opinion. Note that the court has a ready found the word "unfounded" in the Article to be an expression of opinion.
As for the word "frivolous" the court finds that as used in the Editorial, modifying the word "lawsuit", it, too, is an expression of opinion, not of fact. Defendants' Exhibit F, admitted into evidence is Webster's 1988 dictionary definition of frivolous which is: "of little value or importance; trifling; trivial . . . not properly serious or sensible . . .
Both words, nuisance and frivolous, as used in the Editorial are "personal comments about another's conduct . . ." namely Mozzochi's conduct in bringing the lawsuit against Hallas and in bringing other lawsuits. It is a comment on matters of public interest. Mozzochi, on September 14, 1995, was an official candidate for election to the Town Council and clearly a public figure. Accordingly, what he has done up to then, including this conduct in litigation, is a matter of public interest. These comments are, therefore, protected by the First Amendment and are not libelous.[4]
This court finds that taken in its context on the editorial page and signed by Hallas and in their totality the statements would be recognized by the ordinary reasonable person as opinion and not as statements of fact.
There were statements of fact in the Editorial, i.e. that Mozzochi had threatened to file a lawsuit against a woman who had complained about him to the police. However, Mozzochi admitted in court that he had made such a threat. Regardless of the merits of the dispute, he did admit that he had made the threat as had been alleged in the Editorial.[5] However, again, these factual statements were not the subject of the allegations in his Revised Complaint. The court has commented, however, to show that even if one were to give a broad reading of the complaint and include this statement of fact, the statement was in fact true.
As for Mozzochi's claim that the statements are libelous per se, the cases cited by him are not on point since neither of them CT Page 322 deal with injury to a man in his profession and calling. They either deal with charges of criminal conduct or slander. Further, libel per se only permits the plaintiff to recover without proof of actual damages. Battista v. United IlluminatingCo., 10 Conn. App. 486, 491-92 (1987). (Emphasis added). However, the court has not even reached the issue of damages. In the case at bar, the plaintiff has not sustained his burden of proving the statements to be libelous.
Mozzochi did not raise the issues of being held in a false light and intentional infliction of emotional distress in his brief, and, therefore, they are considered abandoned. However, the court will comment on them to make sure its analysis is comprehensive. Suffice it to say that Mozzochi has not sustained his burden of proving he suffered from an invasion of privacy that held him in a false light. A public figure cannot justifiably claim invasion of privacy for the reasons stated above. Additionally, the plaintiff must prove that the statement was false and "is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position," Goodrich, supra at pg. 131. Further, plaintiff would have to prove that the subject of the statement "is not of legitimate concern to the public". Goodrich, supra, at pg. 133. This court has already concluded that Mozzochi being a public figure, the statements are a matter of public interest. In light of these principles, the plaintiff has not sustained his burden of proof on the claim of being held in a false light.
A claim of intentional infliction of emotional distress requires the plaintiff to prove (1) that the actor intended to inflict emotional distress, (2) that the conduct was extreme and outrageous, (3) that the conduct was the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe. DeLaurentis v. New Haven, 220 Conn. 225,266-67 (1991). This court concludes from the totality of the evidence that the plaintiff has not sustained his burden of proof in regard to this claim.
This court recognizes the frustration a public figure encounters with coverage of him or her by the press. The press is not always accurate, it has a right to rely on its "editorial judgment"[6] which may easily differ from that of the public figure, and it can be highly critical, very annoying and sometimes unfair.[7]
CT Page 323
However, the First Amendment to the United States Constitution is both unique and at the heart of our guarantee of liberty. It is the price we pay to protect our liberty. Unlike other countries, freedom of the press and freedom of expression are vital to our liberty because they act as a watchdog on the conduct of our public officials so that any effort to deny us our freedom will be exposed. It is to a large extent what stands between us and the prospect of a totalitarian type of government. As the United States Supreme Court put it in NAACP v. ClairborneHardware Co., 458 U.S. 886, 913 (1982), "Because freedom of expression occupies the highest rung of the hierarchy ofFirst Amendment values, (it) [and] is entitled to special protection . . ."
The only comfort this court can offer to the plaintiff are the words of a former United States Senator from New York who said: "Every time the New York Times criticizes me in an editorial, I know I must have done something right."
For the reasons stated above, judgment is entered for the defendants on all counts.
Rittenband, J.