[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, plaintiff seeks relief as alleged in the first two counts of its March 29, 1995 complaint. Trial was held before the undersigned judge on February 18 and February 20, 1997. Witnesses included Thomas Stokes, Randall J. McHugh, Attorney Ralph Keen, Attorney Adam Bendett, Karl Kuegler, Jr., and Renee Krey. Briefs have been submitted and reviewed.
In Count One, plaintiff seeks to settle title to property known as Unit 13-1, 489 Wolcott Street, Bristol, Connecticut. Count One alleges as follows in its entirety:
COUNT ONE (Action to Settle Title)
1. The Plaintiff FGB Realty Advisors, Inc. is a Texas Corporation duly licensed to conduct business in the State of Connecticut.
2. The Defendant Southridge Condominium Association, Inc. is a Condominium Association located in the Town of Bristol, Connecticut.
3. On December 13, 1993, the Dime Savings Bank of New York, FSB obtained a judgment of foreclosure on the property known as Unit 13-1, 489 Wolcott St., Bristol, Connecticut (the "property") against the Mortgagor Maurice Richardson. The property is more particularly described in Exhibit A, attached hereto.
4. On February 5, 1994 a foreclosure sale of said premises was held on said premises, and the Dime Savings Bank of New York, FSB was the successful bidder.
5. On March 15, 1994 the said foreclosure sale was approved by the Superior Court (Berger, J.). CT Page 5721
6. The Plaintiff acquired an interest in the property by virtue of a purchase of certain Dime assets (including the rights to the property in question) occurring on or about January 25, 1994, and further by a quit claim deed from Dime Savings Bank of New York, FSB, which deed is recorded in the Bristol Land Records.
7. The defendant has wrongfully claimed an estate in the property adverse to the title of the Plaintiff thereto, and the Defendant has wrongfully taken possession of the property and has changed the locks on said premises so as to deny the Plaintiff its rightful access to the property.
8. The property is unique and Plaintiff does not have an adequate remedy at law.
9. If the court does not render judgment in Plaintiff's favor, Plaintiff shall suffer irreparable harm.
In Count Two, Plaintiff seeks equitable relief from judgment. In Count Two, plaintiff alleges as follows:
COUNT TWO (Equitable Relief from Judgment)
 1-7. Paragraphs 1-7 of the First Count are hereby incorporated and realleged as Counts 1-7 of the Second Count.
8. Defendant's claim to the title of the property arises out of a judgment of strict foreclosure granted in the Connecticut Superior Court in which Plaintiff's predecessor was served and cited as a defendant, sub nom. SouthridgeCondominium Association, Inc. v. Dime Savings Bank of NewYork, FSB, CV 94-0539852S.
9. Plaintiff herein believes the foreclosure to be ineffective as the property was not properly identified in that action and the court had no subject matter jurisdiction. However, if the said judgment is not defective, its enforcement is unconscionable and/or inequitable for the following reasons:
(a) The property was valued at $77,000.00 at the time of the judgment, and the total debt on the premises was approximately $1,500.00 in common charge arrears; CT Page 5722
(b) There were no other encumbrances on the property besides the common charges owed to the Defendant;
(c) The court ordered a strict foreclosure when the debt to equity ratio was approximately two percent (2%);
(d) Counsel for the Defendant made material, negligent and/or fraudulent misrepresentations to the judge in connection with the said judgment, which, upon information and belief, influenced the court's granting of a judgment of strict foreclosure in connection with the said matter.
10. If the court allows the judgment to stand, an unconscionable inequity will result.
11. The property is unique and Plaintiff does not have an adequate remedy at law.
12. If the court does not render judgment in Plaintiff's favor, Plaintiff shall suffer irreparable harm.
For the reasons stated below, the Court finds for the defendant on both counts.
Factual Background
A brief statement of factual background will be helpful to place this ruling in context. Dime foreclosed a mortgage against Maurice Richardson in connection with the subject unit. Subsequently, Southridge commenced a foreclosure against Dime, obtaining the property in dispute by strict foreclosure in the case of Southridge Condominium Association,Inc. v. The Dime Savings Bank of New York, FSB, No. CV 94-0539852-S. (The Court does not quarrel with the essential thrust of the facts as set forth in Plaintiffs' Trial Brief of March 19, 1997, although the Court does not endorse the conclusions plaintiff draws from those facts.) In a May 16, 1995 Memorandum of Decision[1] denying defendant Dime's motion to reopen the judgment of strict foreclosure in that case, Judge Satter set out many of the relevant facts in substantial detail. As Judge Satter stated:
 The underlying facts are as follows: On August 23, 1993 Dime Savings Bank of New York, FSB (hereinafter Dime) commenced an action to foreclose a mortgage note and deed CT Page 5723 in the principal amount of $94,300 against the mortgagor and owner of the subject property, Maurice E. Richardson. The plaintiff in the instant action, Southridge Condominium Association, was named defendant in the Dime action. The complaint in the Dime action identified the premises being foreclosed upon as "489 Wolcott Street, Unit 72 a/k/a Unit 13-1, Bristol, Connecticut 06010." A judgment of foreclosure by sale entered on December 13, 1993. The committee advertised the property to be sold at public auction as "Unit 72 aka 13-1, 489 Wolcott Street, Bristol, Connecticut." The sale took place on February 5, 1994. Dime was the successful bidder at $63,000 and its attorney acknowledged on behalf of Dime in the bond for deed between Dime and the committee that, "I am aware that this land and building known as 489 Wolcott Street, 72, aka unit 13-1 Southridge Condominium, Bristol, Connecticut, is sold to me subject to:
(a) Taxes due the Town of Bristol . . .
 (b) Condominium charges due Southridge Condominium Association in the amount of $1881.83 through February 1994;"
 The sale was approved by the Court on April 7, 1994 and on that day title vested in Dime. The committee deed to Dime recites that Dime in its complaint claimed a foreclosure of a mortgage on premises known as "No. 489 Wolcott Road, 72, City of Bristol", and conveyed "Unit No. 13-1 in a common interest community known as Southridge Condominiums . . ."
 The Declaration of Southridge Condominiums does not list a unit numbered 72 but units numbered 1-1 through 13-6.
 On June 1, 1994, counsel for the condominium association, plaintiff in the instant action, wrote to Tom Alexander of Dime at Uniondale, New York, requesting payment of six months common charges accruing prior to the institution of Dime's action, plus common charges accruing after Dime took title and legal fees. When Dime did not respond, the plaintiff condominium association started this action on July 13, 1994 by service upon Dime through the Secretary of State, to foreclose for its unpaid common charges. The property foreclosed upon is identified in CT Page 5724 the plaintiff's complaint as "Unit 72 in a common interest community known as Southridge Condominium . . ." On Dime being served, a Mr. Ron Willis, a paralegal in a New York law firm representing Dime, phoned plaintiff's counsel and asked for a breakdown of the common charges due. Plaintiff's counsel faxed the information to Mr. Willis on August 11, 1994 and on that day Mr. Willis told plaintiff's counsel that Dime did not intend to pay because it was selling the unit and the new owner would pick up the charges.
 The instant action proceeded to judgment before Judge Samuel Freed on September 19, 1994. Dime had not entered an appearance so it was defaulted. The debt was found to be $1597.30, Counsel fee of $1,000, appraisal fee of $300 and title fee of $150 were awarded. The property was found to have a fair market value of $77,000. The judgment of strict foreclosure provided for a law day of October 31, 1994 for Dime, the only defendant. Dime did not appeal and failed to redeem. Accordingly title vested the next day, November 1, 1994, in the plaintiff.
Count One
Count One seeks to quiet title. Plaintiff argues in Count One that Southridge's title is defective because the foreclosure action from which it derived failed to describe the unit by its legally designated unit number. Defendant argues that this count is barred by the doctrines of resjudicata and/or collateral estoppel in light of Judge Satter's May 16, 1995 ruling denying Dime's motion to reopen. See defendant's Special Defense of November 30, 1995. (Defendant also argues that this count was disposed of as a consequence of Judge Satter's March 6, 1996 summary judgment ruling; however, in light of this ruling, that argument will not be addressed.)
I agree with Southridge's claim that plaintiff's ability to pursue this count is barred as a consequence of Judge Satter's March 6, 1996 decision denying the motion to reopen, for the following reasons.
The Motion to Reopen Judgment of Strict Foreclosure was filed by FGB Realty Advisors, Inc., in the case of SouthridgeCondominium Association, Inc. v. The Dime Savings Bank of NewCT Page 5725York, FSB., Docket No. CV-94-0539852S, by motion of December 30, 1994. In that motion, FGB recited in Paragraph 1 that "FGB Realty Advisors, Inc. is a successor in interest to The Dime Savings Bank of New York, FSB with regard to the property which is the subject of the above referenced foreclosure." In Paragraph 2 of the motion, FGB asserted in support of its motion that "The address listed in the Plaintiff's complaint (and its lis pendens) is an address which does not legally exist." Representing FGB in that motion was the law firm of Reiner Reiner, which had represented The Dime in its earlier foreclosure action against Maurice Richardson, pursuant to which The Dime had obtained the property. Southridge filed an objection to the motion to reopen on January 17, 1995, supported by a memorandum of law, dated March 20, 1995. This memorandum addressed in substantial detail the claim that the court lacked subject matter jurisdiction because the unit was misdescribed.
Judge Satter's May 16, 1995 decision, quoted at length above, directly addressed the misdescription claim. In denying the motion to reopen, Judge Satter stated as follows:
 Even when there is an error in the description of land in deeds, our rule is that "if the description in the deed, when read in the light of surrounding circumstances, leaves no doubt of the identity of the land to be conveyed, the courts will recognize the effectiveness of the deed." Loeb v. Al-Mor Corporation, 42 Conn. Sup. 279, 289-90 (1992); Peck v. Lee, 110 Conn, 374, 375 (1930).
 In First Constitution Bank v. Harbor Village Ltd Partnership, 230 Conn. 807 (1994) a mechanics lien was held valid even when the schedule describing the land was not annexed to the lien filed in the land records and despite a statute (§ 49-34) requiring that the lien describe the premises. The court based its decision on the fact the lien was properly indexed by grantor-grantee in the land records, and the party challenging the validity of the lien was not prejudiced by the mistake. The standard of precision of description of property in a foreclosure complaint cannot be higher than in a deed. Moreover, there can be no doubt under the circumstances of this case that CT Page 5726 unit 72, stated in the complaint, is the same as unit 13-1 in the condominium declaration. Repeatedly in Dime's foreclosure action against Richardson, Dime itself refers to "unit 72, aka 13-1, 489 Wolcott Street, Bristol, Connecticut."
 Dime annexed to its motion an affidavit of a title searcher that he could find no lis pendens or certificate of foreclosure recorded by Southridge Condominium Association referring to a unit 13-1. But this is spurious, because the index would show Richardson as grantee of unit 13-1, the lis pendens of Dime's foreclosure action against Richardson, the Committee deed to Dime reciting Dime's complaint claiming a foreclosure of a mortgage on premises known as "No. 489 Wolcott Street 72, City of Bristol", and the lis pendens and certificate of foreclosure of the plaintiff condominium association against Dime. No claim is made that Richardson owned any real estate in Bristol other than the condominium foreclosed upon. Dime, being the only defendant in this action, cannot credibly claim confusion or prejudice First Constitution Bank v. Harbor Village Ltd. Partnership, supra 818-821.
 Thus this court concludes the complaint in this action adequately describes the subject property and the court does have in rem jurisdiction.
Consequently, the motion to reopen raised the same issue which plaintiff in this case seeks to have relitigated.
Our Supreme Court has discussed the doctrines of resjudicata and collateral estoppel on numerous occasions. In the case of Delahunty v. Massachusetts Mutual Life InsuranceCo., 236 Conn. 582, 588-601 (1996), Justice Katz stated as follows:
 We recognize, however, that "[c]laim preclusion, sometimes referred to as res judicata, and issue preclusion, sometimes referred to as collateral estoppel, are first cousins. Both legal doctrines promote judicial economy by preventing relitigation of issues or claims previously resolved. State v. Ellis, 197 Conn. 436, 466, 497 A.2d 974 (1985). CT Page 5727 Scalzo v, Danbury, 224 Conn. 124, 127, 617 A.2d 440
(1992)." (Internal quotation marks omitted.) Commissioner of Motor Vehicles v. DeMilo Co., 233 Conn. 254, 267, 659 A.2d 148 (1995).
 I "[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 94 U.S. 351, 352-53, 24 L.Ed. 195 (1976); 1 Restatement (Second), [supra] §§ 19, 25; James Hazard, Civil Procedure (2d Ed.) § 11.3." State v. Aillon, 189 Conn. 416. 423-24, 456 A.2d 122 (1983). The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it.
 "We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a `transaction,' and what groupings constitute a `series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . Orselet v. DeMatteo,
[supra, 206 Conn. 545-46]; see Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 364-65, 511 A.2d 333 (1986); see also Nevada v. United States,
CT Page 5728 463 U.S. 110, 130-31 n. 12, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983); 1 Restatement (Second), [supra, § 24]. In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action. See, e.g., Nevada v. United States, supra, 131-34; Capraro v. Tilcon Gammino, Inc., 751 F.2d 56, 57
(1st Cir. 1985)." (Internal quotation marks omitted.) Commissioner of Environmental Protection v. Connecticut Building Wrecking Co., 227 Conn. 175, 189-90, 629 A.2d 1116 (1993).
 We recognize that the mere explication of the doctrine of claim preclusion does not resolve all difficulties which may appear at the point of application. As was stated long ago, the law of estoppel by judgment is well settled, the only difficulty being in its application to the facts. Pelham Hall Co. v. Carney, 27 F. Sup. 388, 390
(D.Mass. 1939). The difficulty has always been in determining what matters are precluded by the former adjudication. . . . In applying the rule of claim preclusion, the critical question is how broad a definition to give to the term `same claim' or `cause of action.' The broader the definition, the broader the scope of preclusion. James 
Hazard, [supra] § 11.7, p. 540; see Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 327, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)." (Internal quotation marks omitted.) State v. Ellis, supra, 137 Conn. 463-64.
 Finally, we recognize that a decision whether to apply the doctrine of res judicata to claims that have not actually been litigated should be made based upon a consideration of the doctrine's underlying policies, namely, the interests of the defendant and of the courts in bringing litigation to a close; 1 Restatement (Second), supra, § 24, p. 199; and the competing interest of the plaintiff in the vindication of a just claim. We have stated that res judicata "should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive CT Page 5729 litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. The doctrines of preclusion, however, should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Citations omitted; internal quotation marks omitted.) State v. Ellis,
supra, 197 Conn. 465-67. . . . "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), [supra, § 27, comment (d)]. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James G. Hazard, supra, (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate CT Page 5730 the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, § 27, comment (h]." (Citations omitted; emphasis in original; internal quotation marks omitted.) Jackson v. R. G. Whopple, Inc., 225 Conn. 705, 714-15, 627 A.2d 374 (1993).
 To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case.
 See also CFM of Connecticut, Inc. v. Chowdhury,239 Conn. 375 (1996); Connecticut Natural Gas Corporation v. Miller,239 Conn. 313 (1996); Fink v. Golenbock, 238 Conn. 183 (1996);Fernandez v. Standard Fire Insurance Company,44 Conn. App. 220 (1997); Rosenfield v. Cymbala, 43 Conn. App. 83 (1996).
In this case, review of the record indicates that the claim that the unit was misdescribed has been fully and fairly litigated in the Southridge v. Dime litigation, that Judge Satter's decision necessarily determined this claim, and that the claim was at the heart of the motion to reopen. The record also indicates that FGB had filed an appearance in the prior case (Court Exhibit 2), was fully aware of the motion to reopen (indeed, FGB was the applicant on the motion), was represented by the same law firm that had previously represented The Dime, and therefore should be considered to be a party or privy in that action. See, e.g., Franz v. UnitedStates Fleet Leasing Inc.; 3 Conn. Ops. 369, 372 (March 31, 1997).[2] Indeed, as noted in Footnote 3 below, that claim has also been evaluated — and rejected — by Mulcahy in an earlier stage of this case.
As Justice Katz notes, in light of the important need to permit litigants to present their cases, the doctrines of resjudicata and/or collateral estoppel should not be applied mechanistically. However, under the circumstances of this case, the need to prevent the relitigation of issues requires that this issue not be revisited. I therefore conclude that plaintiffs are precluded from relitigating Count One.[3]
CT Page 5731
Count Two
In Count Two, the plaintiff seeks equitable relief from the consequences of the foreclosure. Plaintiff alleges that enforcement of the foreclosure is unconscionable and/or inequitable because the property was valued at $77,000 at the time of the judgment, and the total debt on the premises was approximately $1,500 in common charge arrears; and because "counsel for the defendant made material, negligent and/or fraudulent misrepresentations to the judge in connection with said judgment, which . . . influenced the court's granting of a judgment of strict foreclosure . . ."[4] On review of the full record, I conclude that plaintiff has failed to carry its burden of persuasion on Count Two.
Preliminarily, it is appropriate to note that the substance of this claim has been commented on in the prior case, and at an earlier stage of this case.
In his May 16, 1995 Memorandum of Decision denying defendant's motion to reopen in the prior case, Judge Satter bluntly stated as follows:
 This case reveals the bureaucratic stupidity of a large bank, owing a fiduciary duty to its depositors and yet failing to act diligently and prudently to protect its assets. It's a sad tale, indeed. The motion to dismiss and/or to reopen is denied.
At an earlier stage in this case, on a less complete record, Judge Mulcahy noted as follows:
 Plaintiff also claims entitlement to equitable relief from Southridge's judgment of strict foreclosure under the principle of an unjust enrichment: that the value of the property acquired by defendant under the judgment of strict foreclosure far exceeded the amount of the debt underlying the judgment. Plaintiff cites First Federal Savings and Loan Assoc. at Rochester v. Delnor Condominium Assoc., Inc., 1993 WL 284827, p. 1 (Conn.Super. 1993); the question presented there, acknowledged to be one of first impression CT Page 5732 in this state, was "whether or not the plaintiff bank [could] prevail in its action for unjust enrichment against the defendant condominium association which acquired absolute title to a property, valued at $24,000 when the association's debt was $2528, as a result of a strict foreclosure in which the plaintiff bank neglected to redeem on its law day." There are significant factual distinctions between the Delnor case and that at bar. Present in Delnor, but not here, were the following: (a) the foreclosed party intended to redeem on its law day; (b) a week before that date, it acted on said intent by sending its check for the proper amount to its attorney; (c) the attorney had notified Delnor's attorney of the client's intent to redeem; (d) the attorney, through inadvertence, failed to deliver the client's check to Delnor on the law day; and, (e) thereafter, when the attorney did seek to correct the mistake, Delnor refused to accept the check. Additionally, it was observed in Delnor that the foreclosing court normally would have ordered a foreclosure by sale because of the disparity between debt and value, but ordered a strict foreclosure based either on representations made at the foreclosure hearing, or in the anticipation the plaintiff would redeem. The court in Delnor
concluded that the totality of the facts justified invocation of the unjust enrichment doctrine. In the instant case it was not established that there exists factual circumstances comparable to those in Delnor. Specific evidence of mistake or unfortunate inadvertence was not presented as a reason for Dime-FSB's failure to redeem. The Delnor Court expressly held that "disparity alone cannot itself be controlling," stating: "[o]therwise, a flood of litigation would follow strict foreclosure judgments." And, the Court also recognized the important public policy implicated with respect to "the finality of title acquired by way of foreclosure, as reflected in [General Statutes] Sec. 49-15." In the circumstances of the present case, where, based on the information presented, it seemed that Dime FSB simply made a decision not to redeem, allowance of recovery on an CT Page 5733 unjust enrichment theory, based primarily on the disparity between debt and appraised value, would not be consistent with public policy considerations respecting finality, and also, would serve to encourage an increased volume of litigation following judgments of strict foreclosure. In view of plaintiff's reliance on Delnor (a decision of a coordinate trial court), and the factual distinctions between that case and the present one (based on the information presented on this preliminary application), it is not clear that plaintiff has a viable right of recovery on the alleged ground.
As our Appellate Court noted in Cross v. Hudon,42 Conn. App. 59, 67-68 (1996):
 "`A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . Connecticut National Bank v. Chapman, 153 Conn. 393, 399, 216 A.2d 814 [1966]. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Providence Electric Co. v. Sutton Place, Inc., 161 Conn. 242, 246, 287 A.2d 379 (1971). . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the [recipients] were benefited, (2) that the [recipients] unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiff's detriment. . . .'" Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co., 231 Conn. 276, 282-83, 649 A.2d 518
(1994).": Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 550, 661 A.2d 530 (1995).
On consideration of the full record, I conclude that none of the evidence produced at trial causes me to conclude any CT Page 5734 differently than Judge Mulcahy did on a less complete record.
The trial evidence does not support plaintiff's claim that Attorney Keen acted negligently or fraudulently in any respect, or that he attempted to mislead the court at any time. Indeed, the record suggests, as defendant argues, that Attorney Keen acted appropriately and did more than he was required to do in connection with his dealings with The Dime in Southridge v. Dime. The trial evidence indicated that he wrote to The Dime twice and asked it to pay the condominium fee. The evidence also indicates that he talked to a representative of The Dime, whom he believed to be an attorney, and asked him to pay the condominium fees. As defendants also note, no-one from The Dime testified that it did not know about the Southridge v. Dime action. Attorney Keen testified that he mailed the notice in timely fashion. Plaintiff asserts that Attorney Keen's statement to Judge Freed on September 19, 1994 that "We spoke with their counsel, we pleaded with them to pay and they never would. They just don't want to do it for whatever reason," was misleading. However, in light of the full record, I do not agree. Attorney Keen's statement was an accurate summary of what he understood at the time. He did not have a duty to provide the Court with a verbatim recapitulation of his communications with Mr. Willis.
When all is said and done, in light of the full record, it is difficult to dispute the conclusions of both Judge Satter and Judge Mulcahy that the problem was caused by The Dime's negligence, not through the fault of Attorney Keen or anyone else. I consequently agree with defendant's argument that equitable relief is not available to plaintiff since the record reveals that plaintiff was harmed by The Dime's negligence, not defendant's. Hoey v. Investors' Mortgage Guaranty Co., 118 Conn. 226, 230-231 (1934); Jarvis v. Martin,77 Conn. 19, 21 (1904).
Moreover, as defendant notes, title to Southridge passed pursuant to the judgment of strict foreclosure. According to Connecticut General Statutes Section 49-15, no judgment of strict foreclosure "shall be opened after title has become absolute in any encumbrancer." Judge Satter, as defendant notes, cited Section 49-15 and its rigors in his ruling denying the motion to reopen. When a statutory scheme is clear, "one cannot be unjustly enriched by a statutory CT Page 5735 enactment." (Emphasis in original). Hudson HouseCondominium Assn., Inc. v. Brooks, 223 Conn. 610, 615 (1992).
I agree further that, on consideration of the full record, the case of First Federal Savings and Loan Assoc. ofRochester v. Delnor, 1993 WL 284827 (1993), upon which plaintiff relies, is readily distinguishable. This was clearly the view of Judge Mulcahy, writing at an earlier stage of this proceeding, when in his ruling denying plaintiff's request for injunctive relief he stated:
 In this case, most significantly, the full record does not reveal that Dime, or plaintiff, ever intended to redeem in a timely fashion. Rather, as defendant argues, the evidence suggests that Dime refused to pay common charges despite being told to do so.
Summary and Conclusion
In consideration of the full record, and having evaluated the evidence presented and the witnesses who testified, for the reasons stated above, judgment shall enter for defendant on both Count One and Count Two.
Douglas S. Lavine Judge, Superior Court