DeMILO AND COMPANY, INC. *v.* COMMISSIONER
OF MOTOR VEHICLES
(15135)

PETERS, C. J., AND CALLAHAN, BORDEN, NORCOTT and KATZ, Js.

Argued February 8—decision released May 23, 1995

*Daniel Shepro,* for the appellant (plaintiff).

*Lawrence G. Widem,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

CALLAHAN, J. The sole issue in this appeal is whether an unreviewed judgment should be given preclusive effect in a subsequent action between the same parties. The plaintiff, DeMilo and Company, Inc. (DeMilo), appeals from the judgment of the trial court, *Susco, J.,*[1] claiming that the court improperly determined that it was collaterally estopped from litigating, in this action, issues decided in favor of the defendant, the commissioner of motor vehicles (commissioner), in a separate action before the trial court, *Ripley, J.,* because the appeal from that judgment had been dismissed as moot. We affirm the trial court's judgment of dismissal on alternative grounds.

---

[1] DeMilo appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The facts of this case are identical to those in *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 659 A.2d 148 (1995), decided this same date. Only the rather convoluted procedural history underlying this appeal requires recitation here.

Since 1975, DeMilo has owned and operated a motor vehicle junkyard and parts business in Hartford. In August, 1986, inspectors from the department of motor vehicles (motor vehicles) visited DeMilo's property in Hartford and found numerous violations of motor vehicles regulations. After an administrative hearing, a motor vehicles adjudicator concluded that DeMilo was in violation of General Statutes § 14-67r and §§ 14-67q-4, 14-67q-6, 14-67q-7, 14-67q-8 and 14-67q-10[2]

---

[2] General Statutes § 14-67r provides: "FENCING. Each new location of a motor vehicle junk yard shall be completely surrounded with a solid fence at least eight feet high with a suitable gate which shall be closed and locked except during the working hours of such junk yard. All unregistered motor vehicles, used parts, old iron, metal, glass, paper, and any other material which may have been parts of such vehicles shall be enclosed within this location. Any dismantling of material or cutting up of parts of such vehicles must be carried on within this enclosure."

Unless otherwise noted, we use the current statutes throughout this opinion because there are no relevant differences between these statutes and those in effect at the time of the underlying controversy.

The relevant Regulations of Connecticut State Agencies regarding motor vehicle junkyards provide: "Sec. 14-67q-4. AREA REQUIRED FOR STORAGE OF SALVAGE MOTOR VEHICLES

"Each licensed motor vehicle junkyard shall maintain a separate and distinct area for the storage of salvage motor vehicles, and such area shall in no case exceed eighty per cent of the licensed and usable area of such yard. . . .

"Sec. 14-67q-6. LOCATION OF STORED VEHICLES

"Each salvage or scrap motor vehicle stored or deposited within a motor vehicle junkyard shall be so located as to be within one hundred feet of an accessible roadway or driveway with a minimum width of twelve feet, such driveway or roadway being connected to a public road or highway.

"Sec. 14-67q-7. PROXIMITY TO OTHER VEHICLES

"With the exception of a motor vehicle placed or stored on top of another, no scrap or salvage motor vehicle shall be located closer than one foot to an adjacent vehicle, provided when scrap or salvage motor vehicles are deposited or stored in a continuous line not to exceed four passenger motor

of the Regulations of Connecticut State Agencies regarding motor vehicle junkyards. The adjudicator suspended DeMilo's junkyard license and imposed a civil penalty of $1000. The junkyard license could be reinstated only upon a satisfactory reinspection and receipt by motor vehicles of the civil penalty.

On February 17, 1987, DeMilo appealed from the adjudicator's administrative decision to the Superior Court. DeMilo claimed that the decision was arbitrary, unreasonable and an abuse of discretion in that: (1) the commissioner had selectively enforced its regulations thereby violating DeMilo's right to equal protection; (2) § 14-67r had been illegally applied to DeMilo; (3) the statute empowering the commissioner to promulgate regulations was unconstitutionally vague; (4) the commissioner had exceeded his authority in promulgating the regulations; and (5) the commissioner was estopped from enforcing the regulations because he had known about the violations for some time before instituting an action.

Subsequently, on February 26, 1987, the commissioner brought a separate action, pursuant to General Statutes § 14-67v,[3] to enjoin DeMilo from operating or

vehicles in length, it shall be necessary only to maintain the one-foot separation between the sides of such vehicles.

"Sec. 14-67q-8. LOCATION OF VEHICLES PURCHASED FOR SCRAP

"Each motor vehicle purchased or obtained for scrap shall be deposited or stored in the portion of the yard reserved for the processing of vehicles. . . .

"Sec. 14-67q-10. STACKING OF OTHER MOTOR VEHICLES

"Stacking of motor vehicles, other than processed motor vehicles, at a height greater than two vehicles is prohibited."

[3] General Statutes § 14-67v provides: "PENALTY. INJUNCTION TO RESTRAIN VIOLATION. Any person, or any officer or agent of any firm or corporation, who establishes, operates or maintains a motor vehicle junk yard or motor vehicle junk business in any location within a restricted district created under the provisions of this subdivision (H), or establishes, operates or maintains such junk yard or business without procuring such certificate of approval from the local authority or establishes, operates or maintains an intermediate

maintaining a motor vehicle junkyard in violation of motor vehicles regulations.[4] After a hearing held that same day, a temporary injunction was issued by the court, *Aronson, J.*, ordering DeMilo immediately to "take steps to remove all unregistered motor vehicles, used parts, tires and other materials . . . from the property outside its fenced-in motor vehicle junkyard location. . . ." The court also scheduled further hearings to be held on the commissioner's application for an injunction.

DeMilo made the same claims as special defenses to the commissioner's application for an injunction as those it had advanced in the administrative appeal to the Superior Court, i.e., selective enforcement of the regulations, illegal application of § 14-67r, vagueness of the regulations, the commissioner's exceeding his

processor in violation of any provision of this subdivision (H), or transports or hauls any motor vehicle or used parts of a motor vehicle in violation of any provision of this subdivision (H) or violates any provision of this subdivision (H), shall be fined not more than one hundred dollars or imprisoned not more than ninety days or both. Each day of such establishment, operation or maintenance in violation hereof shall constitute a separate offense. The commissioner of motor vehicles may, after notice and hearing, impose a civil penalty of not more than two thousand dollars on any person, firm or corporation who establishes, operates or maintains such junk yard or business without a license. In addition to the penalties herein prescribed, the commissioner of motor vehicles or the local authority, upon a violation of any of the provisions of this subdivision (H), may bring an application to the superior court for the judicial district where such yard or business is located to enjoin a further operation or maintenance of such yard or business and to abate the same as a public nuisance. Said court may, upon finding such yard or business has been established, operated or maintained in violation of the provisions of this subdivision (H), issue such injunction as it deems equitable and make such order for the discontinuance or abatement of such yard or business as a nuisance as it finds to be necessary, including authorization to the commissioner of motor vehicles to enter such yard or business to eliminate, at the expense of the defendant, the conditions which constitute the violation of any provision of this subdivision (H)."

[4] The regulations cited by motor vehicles were the same regulations at issue in the administrative proceeding. See footnote 2.

authority in promulgating the regulations and estoppel. After a plenary hearing on the commissioner's application for an injunction, Judge Ripley concluded that DeMilo had created a public nuisance in violation of § 14-67v, and rendered a judgment ordering injunctive relief. In arriving at its conclusion, the court rejected each of DeMilo's special defenses.

On June 10, 1987, DeMilo appealed from the judgment rendered by Judge Ripley (Ripley judgment) to the Appellate Court, claiming that the trial court improperly had: (1) concluded that DeMilo had maintained a public nuisance; (2) authorized the commissioner to "crush and destroy" the junked vehicles rather than simply remove them; (3) concluded that DeMilo had violated General Statutes § 14-67i;[5] and

---

[5] General Statutes § 14-67i provides: "CERTIFICATE OF APPROVAL OF LOCATION; LICENSE REQUIRED. EXCEPTIONS. (a) No person, firm or corporation shall establish, operate or maintain a motor vehicle junk yard or motor vehicle junk business unless a certificate of approval of the location to be used therefor has been procured from the selectmen of the town, the mayor of the city or the warden of the borough wherein such yard or business is located or is proposed to be located, except that, in any city or town having a zoning commission, such certificate shall be procured from the zoning commission, certifying that such location is suitable for the proposed use, consideration being given to the factors specified in section 14-67k, nor unless a license to establish or maintain such a yard or such a business has been obtained from the commissioner of motor vehicles as provided in section 14-67l.

"(b) The provisions of this section shall not apply to: (1) Any public agency, as defined in section 7-339a, which acquires, collects, dismantles or disposes of junk or abandoned motor vehicles pursuant to a program of solid waste disposal, in accordance with the provisions of chapter 446d and the regulations of Connecticut state agencies, concerning the operation of motor vehicle junk yards, provided this exemption shall not apply to any public agency which sells or distributes or exchanges for profit motor vehicle parts for reuse as such, and provided further, such public agency shall designate an employee to maintain accurate records of all motor vehicles received and processed. Such records shall include the make, year, serial number and, if available, the name and address of the person from whom each vehicle was received. A list containing the make, year and serial number of each such motor vehicle shall be sent to the commissioner of motor vehicles on or before the last day of the month following the month during which such

(4) concluded that violations existed on areas not licensed by motor vehicles for the junkyard business. After a hearing, on February 4, 1988, the Appellate Court, sua sponte, dismissed DeMilo's appeal as moot. We denied DeMilo's petition for certification for review of the Appellate Court's dismissal. *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 207 Conn. 809, 541 A.2d 1238 (1988).

On January 19, 1989, the commissioner brought a separate action in the Superior Court to enforce the Ripley judgment. The complaint alleged that the commissioner had complied with the Ripley judgment by having a contractor dispose of the junked vehicles and other debris from the unlicensed property. In count one of the complaint, the commissioner requested monetary damages because, as ordered by Judge Ripley, DeMilo had not reimbursed the commissioner for the expense of abating the public nuisance. In count two of the complaint, the commissioner requested that he be allowed to foreclose his mortgage on DeMilo's property, obtained when DeMilo, in compliance with the Ripley judgment, had posted a bond that was secured by a mortgage deed on its real estate.

DeMilo filed four special defenses to the commissioner's complaint, claiming that it should not have to pay the costs of removal because the commissioner had

disposal occurred; or (2) any intermediate processor operating at a licensed facility, pursuant to subsection (a) of this section. 'Intermediate processor' means any person, firm or corporation which dismantles, crushes or otherwise conditions junk or abandoned motor vehicles or parts thereof for delivery to a scrap metal processor as defined in section 14-67w, or for disposal in any other manner permitted by law, and which does not sell automobile parts for reuse as parts; provided all such junk or abandoned motor vehicles or parts thereof shall, at the time of such dismantling, crushing or conditioning, be owned by or in the custody of, and located on premises of or maintained by the holder of a motor vehicle junk yard license issued pursuant to section 14-67*l*, or by a public agency exempted under this subsection."

removed materials from the property: (1) in violation
of the laws and regulations governing both motor vehi-
cles and the department of environmental protection;
(2) without competitive bidding as required by General
Statutes (Rev. to 1993) § 4a-57;[6] (3) from areas not

[6] General Statutes (Rev. to 1993) § 4a-57 provides: "COMPETITIVE BIDS
FOR PURCHASES AND CONTRACTS. SALES. WAIVER. COMPETITIVE NEGOTIA-
TIONS. (a) All purchases of, and contracts for, supplies, materials, equip-
ment and contractual services, except gas, water and electric light and
power services, and purchases and contracts made pursuant to the provi-
sions of subsection (c) of this section shall be based, when possible, on com-
petitive bids. Any personal property which has become obsolete,
unserviceable or unusable may be sold (1) on the basis of competitive bids,
(2) at public auction or (3) at a retail store owned by the state and open
to the public. The commissioner shall solicit competitive bids by sending
notice to prospective suppliers and by posting notice on a public bulletin
board in his office. Such notice shall contain a notice of state contract
requirements pursuant to section 4a-60. Each bid shall be kept sealed until
opened publicly at the time stated in the notice soliciting such bid. If the
amount of the expenditure or sale is estimated to exceed ten thousand dol-
lars, competitive bids shall be solicited by public notice inserted at least
once in not fewer than three daily newspapers published in the state, and
at least five calendar days before the final date of submitting bids. All pur-
chases or sales of ten thousand dollars or less in amount shall be made in
the open market, but shall, when possible, be based on at least three com-
petitive quotations.

"(b) (1) Any personal property to be sold under section 4a-52 and sub-
section (a) of this section on the basis of competitive bids shall be offered
for sale to municipalities, transit districts and the public at the same time,
provided the commissioner of administrative services shall sell the prop-
erty to the municipality or transit district which submits the highest bid.
If no municipality or transit district submits a bid the commissioner shall
sell the property to the highest public bidder. Any personal property to
be sold under said section and subsection at a public auction shall be offered
first to municipalities and transit districts and sold to the municipality or
transit district which makes the highest bid, provided the commissioner
may order that any or all bids may be rejected when, in his opinion, the
best interest of the state would be served thereby. If no municipality or
transit district makes a bid, or if all bids are rejected, the commissioner
shall solicit bids from the public at the same public auction and shall sell
the property to the highest public bidder. (2) If the commissioner is unable
to sell any property to the highest public bidder pursuant to subdivision
(1) of this subsection, the commissioner shall offer the property for sale
to the public at a retail store owned by the state. If the commissioner is
unable to sell any property at such store, he shall donate the property to

anticipated in the Ripley judgment; and (4) in violation of an automatic stay of proceedings[7] resulting from the appeal of the Ripley judgment. The fourth special defense also included an allegation that the Ripley judgment was "erroneous."[8] The trial court, *Hon. David M. Shea,*

a charitable or other nonprofit organization. If the commissioner is unable to donate the property to such an organization, he shall dispose of the property.

"(c) The commissioner may, at his discretion, waive the requirement of competitive bidding in the case of minor nonrecurring and emergency purchases of six hundred dollars or less in amount. The commissioner may use competitive negotiation to purchase or contract for data processing equipment, programs or services having a cost of twenty thousand dollars or less or advertising space or time after making a written determination, including the reasons therefor, that such action is in the best interest of the state. The commissioner shall adopt regulations, in accordance with the provisions of chapter 54, establishing (1) objective standards for determining when such competitive negotiation may be used instead of competitive bidding, including whether the character of such data processing equipment, programs or services or advertising space or time is more important than their relative cost, (2) procedures to be followed in making purchases, contracts or sales not subject to the competitive bid requirements of this section, including but not limited to, criteria which shall be considered in making purchases by competitive negotiation and the weight which shall be assigned to each such criterion and (3) standards and procedures under which additional purchases may be made on a limited basis under existing contracts."

[7] On appeal, DeMilo does not challenge the trial court's finding that there was no automatic stay of proceedings in place. General Statutes § 52-477 provides that an application for such a stay is necessary in the case of an appeal from a judgment for a permanent injunction, such as in this case. The Ripley judgment was rendered pursuant to § 14-67v, which provides for injunctive relief. DeMilo had applied for a stay of proceedings, but that application was denied on June 10, 1987.

[8] The special defenses provide in relevant part:

"FIRST SPECIAL DEFENSE:

"1. The moving of materials by the plaintiff or for the plaintiff was performed without compliance with the Department of Motor Vehicles and Department of Environmental Protection Laws . . . .

"2. As a result, the defendant should not be charged with the cost of removal.

"SECOND SPECIAL DEFENSE:

"1. The costs of the move secured by the mortgage [were] incurred without competitive bidding and were not reasonable or just.

state trial referee, rejected each of DeMilo's defenses, and rendered judgment for the commissioner on both counts of his complaint. That judgment is the subject of another appeal in this court decided this same date. See *Commissioner of Motor Vehicles v. DeMilo & Co.,* supra, 233 Conn. 254.

After DeMilo's appeal from the Ripley judgment had been dismissed, but before judgment had been rendered in the enforcement action before Judge Shea, the trial court in this action, *Susco, J.,* concluded that the Ripley judgment had collateral estoppel effect on the issues raised in DeMilo's administrative appeal and dismissed the appeal.[9] The court found that "[t]he fact that the issues were decided in an action in equity after a full and fair opportunity to litigate them does not allow them to be relitigated in this administrative appeal." On appeal, DeMilo argues that the trial court improperly determined that collateral estoppel applied, and requests a new hearing.

"2. As a result, the defendant should not be responsible to pay the costs claimed.

"THIRD SPECIAL DEFENSE:

"1. The plaintiff moved the materials from areas not covered by the court order referred to in the complaint.

"2. As a result, the defendant should not be held responsible for the costs claimed.

"FOURTH SPECIAL DEFENSE:

"1. The plaintiff moved the property in violation of the automatic stay [of] proceedings.

"2. As a result, the defendant's appeal from the order was held to be moot.

"3. The order was erroneous.

"4. As a result, the defendant should not have to pay the costs of removal and should be equitably [e]stopped to make the claim."

[9] The trial court noted that the Ripley judgment was pending on appeal at the time of its memorandum of decision. In fact, the appeal from the Ripley judgment had been dismissed as moot more than five years before the trial court issued its memorandum of decision. The record does not reflect whether the parties had made the court aware of the dismissal. For purposes of this appeal, we take judicial notice of the Appellate Court's dismissal as moot of the appeal from the Ripley judgment.

The result in this appeal is governed by our decision in *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, supra, 233 Conn. 254, in which we adopted the rule in 1 Restatement (Second), Judgments § 28 (1) (1982). Section 28 (1) provides: "Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . ." "In other words, we will not apply collateral estoppel, where it would otherwise be applicable, if the party who was unsuccessful in the initial action is barred, as a matter of law, from obtaining appellate review of the initial action. 'Such cases can arise, for example, because the controversy has become moot. . . .' Id., comment a." *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, supra, 254.

DeMilo, as a matter of law, was unable to obtain review of the Ripley judgment because the appeal had been dismissed as moot. The Ripley judgment, consequently, did not have collateral estoppel effect on the merits of the administrative appeal before the trial court. Id. The trial court, therefore, improperly dismissed the appeal on the basis of its determination that the Ripley judgment had collateral estoppel effect on the issues raised in this administrative appeal.

Our analysis, however, does not end there. "The legal doctrines of res judicata and collateral estoppel are designed to 'promote judicial economy by preventing relitigation of issues or claims previously resolved.' *Scalzo* v. *Danbury*, 224 Conn. 124, 127, 617 A.2d 440 (1992)." *Genovese* v. *Gallo Wine Merchants, Inc.*, 226

Conn. 475, 484, 628 A.2d 946 (1993). Because there was another proceeding that addressed or could have addressed DeMilo's claims raised in this administrative appeal, that being the proceeding to enforce the Ripley judgment heard before Judge Shea, we must decide if the disposition of that case has res judicata effect on the claims raised in the present appeal. In other words, because DeMilo has requested a new hearing, we must determine if, after our affirmation of the judgment of Judge Shea on appeal, there is anything left to be litigated in this administrative appeal. We conclude that there is not, because DeMilo either advanced, or could have advanced, every claim or defense to the merits of the Ripley judgment in the enforcement action before Judge Shea, including those raised in this appeal.

" 'Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which *might have been offered* for that purpose. *Cromwell* v. *County of Sac*, 94 U.S. 351, 352–53, 24 L. Ed. 195 (1876); 1 Restatement (Second), [supra] §§ 19, 25; James & Hazard, Civil Procedure (2d Ed.) § 11.3.' *State* v. *Aillon*, 189 Conn. 416, 423–24, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983)." (Emphasis added.) *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 128, 627 A.2d 1257 (1993); see *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 188, 629 A.2d 1116 (1993) ("[m]oreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made"); *Scalzo* v. *Danbury*, supra, 224 Conn. 127–28 (same); see also *DeLaurentis* v. *New Haven*, 220 Conn.

225, 239, 597 A.2d 807 (1991); *Connecticut Water Co.* v. *Beausoleil,* 204 Conn. 38, 43, 526 A.2d 1329 (1987). The doctrine of res judicata, therefore, applies not only to claims actually made and litigated; see 1 Restatement (Second), supra, § 27 (regarding collateral estoppel); but also to claims that a party *could have made* in the initial action.

In *Commissioner of Motor Vehicles* v. *DeMilo & Co.,* supra, 233 Conn. 254, we concluded that DeMilo had had the opportunity in the enforcement action before Judge Shea to present any and all defenses not only to the enforcement of the Ripley judgment, but to the merits of that judgment. DeMilo failed, however, to raise all of those possible defenses in the enforcement action before Judge Shea. In particular, it did not bring to the attention of the trial court all the claims that it previously had pleaded in the administrative appeals or all the defenses that it previously had pleaded in the injunctive action before Judge Ripley.

In the circumstances of this case, we are persuaded that, pursuant to principles of res judicata, DeMilo's failure to present relevant issues as special defenses in the enforcement action before Judge Shea bars it from raising those same issues as affirmative claims here. We acknowledge that, pursuant to the Restatement (Second) of Judgments, DeMilo's failure to allege particular issues as special defenses to a previous action by the commissioner would "not normally preclude him from relying on those [issues] in an action subsequently brought by him against" the commissioner. See 1 Restatement (Second), supra, § 22, comment (b). This case, however, is one in which "the relationship between the [defenses that could have been raised] and the plaintiff's claim [here] is such that successful prosecution of [this] action would nullify the initial judgment or would impair rights established in the initial action." Id., § 22 (2) (b), and comment (f) and illustrations 9 and

10. Thus, DeMilo's failure to raise the relevant defenses in the action before Judge Shea bars it from litigating those issues as affirmative claims here.

All that is left to determine, then, is whether the enforcement action and this appeal involve all the same claims. "We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . *Orselet* v. *DeMatteo*, 206 Conn. 542, 545–46, 539 A.2d 95 (1988); see *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 364–65, 511 A.2d 333 (1986); see also *Nevada* v. *United States*, 463 U.S. 110, 130–31 n.12, 103 S. Ct. 2906, 77 L. Ed. 2d 509 (1983); 1 Restatement (Second), [supra, § 24]. In applying the transactional test, *we compare the complaint in the second action with the pleadings and the judgment in the earlier action.* See, e.g., *Nevada* v. *United States*, supra, 131–34; *Capraro* v. *Tilcon Gammino, Inc.*, 751 F.2d 56, 57 (1st Cir. 1985)." (Emphasis added; internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, supra, 227 Conn. 189–90.

We must compare the factual background and the claims raised in this appeal to the pleadings and the

judgment in the proceedings brought to enforce the Ripley judgment before Judge Shea. The Ripley judgment, the commissioner's action to enforce the Ripley judgment and this administrative appeal all have identical factual underpinnings—they all arose from the same series of transactions regarding violations of the junkyard statutes and regulations on DeMilo's property and the abatement of those violations. DeMilo did not claim in this administrative appeal that, for example, the civil penalty or the thirty day license suspension was excessive. Rather, DeMilo's only claims in this appeal are identical to those it had raised before Judge Ripley.

In the enforcement action, Judge Shea considered the merits of the Ripley judgment and concluded that DeMilo "was operating its motor vehicle junkyard in violation of the regulatory statutes." The court, therefore, determined that the Ripley judgment was valid and that the commissioner could enforce it. Because the same claims raised by DeMilo in this administrative appeal could have been raised by DeMilo in that action before Judge Shea when that court considered the merits of the Ripley judgment, we conclude that the doctrine of res judicata applies, and, consequently, the order of Judge Shea has res judicata effect on all of DeMilo's claims raised in this administrative appeal.

"[T]his court is authorized to rely upon alternative grounds supported by the record to sustain a judgment. . . . The . . . judgment will be affirmed, though based on erroneous grounds, if the same result is required by law. *Henderson* v. *Department of Motor Vehicles*, 202 Conn. 453, 461, 521 A.2d 1040 (1987); *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 532, 461 A.2d 1369 (1983); *A & H Corporation* v. *Bridgeport*, 180 Conn. 435, 443, 430 A.2d 25 (1980); *Johnny Cake, Inc.* v. *Zoning Board of*

*Appeals*, 180 Conn. 296, 301, 429 A.2d 883 (1980); C. Tait, Connecticut Appellate Practice and Procedure (1991) § 7.14." (Internal quotation marks omitted.) *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 88–89, 629 A.2d 1089 (1993), cert. denied,    U.S.    , 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994).

The judgment is affirmed.

In this opinion the other justices concurred.

