[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant Continental Casualty Company, doing business as CNA Insurance Companies, moves for summary judgment[1] on the plaintiff's second amended complaint, which alleges that it acted unreasonably and in bad faith and violated the Connecticut Unfair Trade Practices Act (CUTPA) by unreasonably contesting the plaintiff's claim for workers' compensation benefits. The court holds that the defendant is entitled to summary judgment because the plaintiff's remedies fall within the exclusive jurisdiction of the Workers' Compensation Act. In addition, the plaintiff is precluded from bringing the issues before this court under the doctrine of collateral estoppel because the issues have been finally litigated before the workers' compensation commission.
The plaintiff, James Nicolelli, applied for workers' compensation benefits when he injured his neck and back while working for Marlin Firearms Company (Marlin). The defendant, Marlin's workers' compensation insurer, denied the request for benefits asserting that the plaintiff's injuries were preexisting. The plaintiff filed a claim with the workers' compensation commission for workers' compensation benefits and for attorney's fees due to the defendant's bad faith contest and delay in payments. The commissioner awarded benefits to the plaintiff but denied his request for attorneys fees, finding that the defendant had acted reasonably in contesting the claim. The plaintiff then brought this action.
The plaintiff has filed a two count second amended complaint (amended complaint) against the defendant. The plaintiff alleges in the first count that the defendant issued a workers CT Page 13752 compensation policy of insurance to Marlin, of which the plaintiff was a direct beneficiary. The plaintiff alleges that the defendant acted unreasonably and in bad faith by denying the plaintiff's claim and refusing to make reasonable and necessary payments for the plaintiff's medical treatment and loss of time from work as required by the Workers' Compensation Act. The plaintiff alleges in the second count that the defendant's conduct violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.
The defendant asserts two special defenses which are the basis of its motion for summary judgment. First, the defendant argues that the plaintiff's claims are barred by the exclusivity provisions of the Workers' Compensation Act. Second, the defendant argues that the plaintiff's claims are barred by the doctrine of res judicata. The defendant moves for summary judgment based on these defenses.
 I
With respect to the defendant's claim of exclusivity, it is true that the claims asserted by the plaintiff in this action are not injuries that "aris[e] out of and in the course of" his employment with Marlin, within the scope of General Statutes § 31-384 (a) of the Workers' Compensation Act. That, however, does not end the matter. As this court has previously held after an extensive discussion, an employee may not maintain an action in tort against the workers' compensation insurer "for consequential damages arising out of the unreasonable delay in paying workers' compensation benefits . . . [because] the action is contrary to the overall scheme and intent of the Worker's Compensation Act"; Brosnan v. Sacred Heart University, Superior Court, judicial district of Fairfield, Docket No. 333544 (October 21, 1997) (20 Conn. L. Rptr. 509); which prescribes exclusive remedies for a workers' compensation carrier's bad faith contest of claims and delay in paying workers' compensation benefits. This court has not been persuaded to change its opinion, expressed in Brosnan, which was grounded in the legislative intent of General Statutes §§ 31-295 (c), 31-296, 31-300 and31-303, and on the comprehensive scheme of the Workers' Compensation Act.[2]
 II
The defendant argues that both counts are barred under the CT Page 13753 doctrine of res judicata. "The legal doctrines of res judicata and collateral estoppel are designed to promote judicial economy by preventing relitigation of issues or claims previously resolved." (Internal quotation marks omitted.) DeMilo Co. v.Commissioner of Motor Vehicles, 233 Conn. 281, 291, 659 A.2d 162
(1995). Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, "are first cousins." Scalzo v.Danbury, 224 Conn. 124, 127, 617 A.2d 440 (1992). "The subtle difference between claim preclusion and issue preclusion has been so described: [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . . Under claim preclusion analysis, a claim — that is, a cause of action — includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made.
"In contrast, issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . .
"Issue preclusion applies if an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. . . . An issue is actually litigated if it is properly raised in the pleadings, submitted for determination, and in fact determined. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually "have the characteristics of dicta." (Citations, footnote and internal quotation marks omitted.) Id., 127-29. "In order for collateral estoppel to apply, [moreover], there must be an identity of issues, that is, the prior litigation must have resolved the same legal or factual issue that is present in the second litigation." (Internal quotation marks omitted.) Connecticut National Bank v. Rytman,241 Conn. 24. 38, 694 A.2d 1246 (1997). The Supreme Court has recently held that res judicata applies to workers' compensation awards. Maronev. Waterbury, 244 Conn. 1, 12, 707 A.2d 725 (1998). CT Page 13754
The plaintiff's lawsuit here is based on breach of contract and CUTPA, two causes of action which the workers' compensation commissioner did not have jurisdiction to entertain and in fact did not entertain. "[I]t is settled law that the commissioner's jurisdiction is `confined by the Act and limited by its provisions.'" Gagnon v. United Aircraft Corporation,159 Conn. 302, 305, 268 A.2d 660 (1970); see Sickney v. SunlightConstruction, Inc., 48 Conn. App. 609, 711 A.2d 1193 (1998), affirmed, 248 Conn. 754, 730 A.2d 630 (1999) (claims based on insurance contract interpretation beyond commissioner's jurisdiction); see also Hanson v. Transportation General, Inc.,245 Conn. 613, 618, 716 A.2d 857 (1998); Discuilo v. Stine Webster, 242 Conn. 570, 576, 698 A.2d 873 (1997). The defendant must, therefore, rely on issue preclusion, or collateral estoppel.
 A.
The plaintiff first argues in response to the claim of collateral estoppel that the commissioner's decision that the defendant's contest of the plaintiff's claim had been reasonable was not a final judgment for res judicata purposes because it was modifiable. The court disagrees.
In Marone v. Waterbury, supra, 244 Conn. 1, the court stated that "[f]or res judicata purposes, a judgment is final if no further judicial action by [the] court rendering judgment is required to determine [the] matter litigated. . . . A final award is [o]ne which conclusively determines the matter submitted and leaves nothing to be done except to execute and carry out the terms of [the] award. . . .
"Whether a judgment is final depends upon the governing statute. [T]he line that separates lower court judgments that are pending on appeal (or may still be appealed), from lower court judgments that are final, is determined by statute. . . . Having achieved finality . . . a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy. . . . Principles of finality are equally applicable to administrative decisions, such as workers' compensation awards, that are appealable to the Superior Court. Both employers and their injured employees must be able to depend on the finality of administrative decisions and the appeals taken therefrom in order to regulate their future behavior." (Citations omitted; internal quotation marks omitted.) Id., 12-13. CT Page 13755
Even if the commissioner's decision of no unreasonable contest were modifiable, a proposition this court does not endorse, no further action by commissioner was required in order to determine that matter. "Workers' Compensation awards are final judgment[s] as to benefits through the date of the hearing If such an award were not a final judgment because it was subject to such modification, no workers' compensation award could ever be final, and therefore appealable, until the claimant either died or recovered. . . ." (Internal quotation marks omitted.) Maronev. Waterbury, supra, 244 Conn. 14. "[A] motion to open [an award] under such changed conditions is . . . virtually a new proceeding. . . . Therefore, while workers' compensation awards may bear some resemblance to interlocutory decrees, that similarity does not mean that such an award is, in fact, interlocutory. For example, a workers' compensation award conclusively establishes the employer's liability and precludes relitigation of that issue in a subsequent action brought in a court of general jurisdiction." (Citation omitted; internal quotation marks omitted.) Id., 13-14. The plaintiff did not appeal the commissioner's decision which therefore became a final judgment in accordance with General Statutes § 31-300.[3]
 B.
The plaintiff argues that in the workers' compensation proceeding, the defendant was not "formally a party." The plaintiff is mistaken. General Statutes § 31-341 provides in relevant part: "When a claim for compensation by any such injured employee or the dependent of an injured employee of an employer who has insured his liability . . . does not result in a voluntary agreement and a hearing before a compensation commissioner is necessary to determine such claim, the insurer shall receive the same notice of such hearing as is by law required to be given to the employer and shall thereupon be aparty to the proceeding." (Emphasis added.) The defendant was very much a party to the proceedings before the commissioner. Indeed, this is confirmed by copies of documents filed in the workers' compensation proceeding, submitted in support of the defendant's motion.
 C.
Finally, the plaintiff claims that the issues raised here are not identical to the issue decided by the commissioner. CT Page 13756
Paragraph 9 of the first count alleges that the defendant "denied the claim of the plaintiff and refused to make reasonable and necessary payments for his medical treatment and for his loss of time from work as required by the Workers Compensation Act. . . ." In paragraph 10 of that count, the plaintiff states that the defendant's "failure and refusal to pay the worker's compensation claims of the plaintiff was unreasonable and in breach of their [sic] obligation of good faith and fair dealing."[4] In the second count, the plaintiff repeats the first eight paragraphs of the first count and adds that the defendant's conduct constitutes a CUTPA violation.
On summary judgment, the court may recognize the reality of the case. See S.E.C. v. Research Automation Corp., 585 F.2d 31,34 (2d Cir. 1978); DiMauro v. Pavia, 492 F. Sup. 1051, 1059 (D. Conn. 1979) (Newman, J.), affirmed, 614 F.2d 1286 (2d Cir. 1979), cert. denied, 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 792
(1980). The reality here is that, at bottom, both counts of the plaintiff's complaint in this action are based on the defendant's unreasonable contest of the claim for worker's compensation benefits.
The plaintiff raised the issues underlying both counts of the amended complaint in the workers' compensation proceeding when, in his brief to the commissioner, he sought attorney's fees pursuant to General Statutes § 31-300,[5] contending that the defendant acted unreasonably and in bad faith in its contest of the plaintiff's claim and denial of benefits. In the commissioner's memorandum of decision, he denied the claim for interest and attorney's fees and explicitly held that "[t]he Claimant's extensive pre-existing medical history including several accidents resulting in injuries to the Claimant's back presented a sufficiently complicated medical picture with respect to causation and extent of injury to warrant the Respondent — Employer's contest of this matter and consequently the Respondent's defense of the Claimant's claim is found to be reasonable when the totality of the circumstances are considered."
"Bad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) Gupta v.New Britain General Hospital, 239 Conn. 574, 598, 687 A.2d 111
(1996). Bad faith has also been defined as "neglect or refusal to fulfill some duty or some contractual obligation, not prompted by CT Page 13757 an honest mistake as to one's rights or duties, but by some interested . . . motive." Avon Plumbing Heating Co., Inc. v.Fey, 40 Conn. App. 351, 355 n. 8, 670 A.2d 1318 (1996), and cases cited therein. The defendant could not have acted reasonably in contesting the plaintiff's claim before the commissioner and unreasonably and in bad faith for purposes of these proceedings.
Nor could the defendant have acted reasonably for purposes of the workers' compensation Act and have violated CUTPA. In determining whether a practice is unfair for purposes of CUTPA, the court employs the following criteria: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." HartfordElectric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368, — A.2d — (1999). There is no common law antecedent to the obligation to pay workers' compensation benefits. Brosnan v.Sacred Heart University, supra. That obligation is wholly statutory and the statutory obligation exists within the context of a statutory scheme that is comprehensive. Brosnan v. SacredHeart University, supra. The standard for determining whether an insurer violated that obligation, within the context of this case, is stated in General Statutes § 31-300: whether it has "unreasonably contested liability."[6]
The issue of whether the defendant unreasonably contested liability to pay workers' compensation benefits was raised by the plaintiff before the commissioner and was finally determined by him on the merits in a decision from which no appeal was taken. The plaintiff is precluded from relitigating the issue in this court.
For these reasons, the defendant's motion for summary judgment is granted.
BY THE COURT
Bruce L. LevinJudge of the Superior Court