[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Edward McCall commenced this action against the city of Danbury and the Danbury Police Department (collectively "Danbury") alleging that, as an African-American citizen of the United States, he was discriminated against on the basis of race and color by the failure of Danbury to hire him as a police officer, in violation of General Statutes § 46a-60, the Connecticut Fair Employment Practices Act. McCall alleged that he met the requirements of the position and received a passing score of 92 on the written civil service examination. CT Page 584
Danbury has moved for summary judgment. The major contentions of this motion are: (1) that McCall was not illegally discriminated against; indeed, he was treated the same as all other applicants for the police officer position; and (2) his claims are barred by the doctrine of res judicata and/or collateral estoppel.
McCall opposes the summary judgment motion on three grounds. First, he strongly contends that his failure to be hired was the result of Danbury's illegal discriminatory acts and procedures. He points to the facts that white applicants who received a lower score than he did on the written examination were hired, that he was not allowed to take the physical/agility test, and that Danbury did not time-stamp applications. Second, McCall argues that there are unresolved material facts. Third, he argues that a continuance is necessary, pursuant to Practice Book §17-47, to allow additional discovery.
 I LEGAL STANDARD [S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. (Citations omitted; internal quotation marks omitted.)
Witt v. St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753
(2000).
 II FACTS
The following are undisputed and material facts. In March, 1996, Danbury conducted a written civil service examination as part of the process to fill eleven municipal police officer vacancies. Candidates receiving passing scores on the written test were ranked on an eligibility list according to their "final" scores. Final scores were calculated by adding to passing written test scores mandatory preference CT Page 585 points for veteran's and/or special officer status. See General Statutes § 7-415; Danbury Code § 15-17. McCall, an African-American, received a passing score of 92 on the written exam. He did not receive, and does not claim entitlement to, any preference points.
The job announcement stated that those passing the written exam would be tested physically, psychologically and by polygraph and have their background checked. Despite the announcement, these tests were not administered to McCall. Instead, Danbury tested only the top 47 eligible candidates, those with final scores of 95 or higher.[1] Two of the 47 were white candidates with lower written test scores but higher final scores than McCall after preference points were added. In May, 1996, Danbury hired eleven police officers from the 47 candidates advanced to further testing. In 1998, Danbury, moving down the eligibility list, appointed a white male, Robert Morlock, whose final written test score was 92. Morlock was ranked ahead of the plaintiff because he had submitted his exam application on March 4, 1996, four days before McCall had submitted his. The Danbury Civil Service Rules and Regulations state that ties were to be broken by the order in which returned exam applications were time-stamped.[2]
In July, 1997, McCall, along with others, sought intervener status in a discrimination lawsuit then pending against Danbury in the United States District Court. The action involved a challenge to the Danbury Police Department's hiring practices with respect to minorities. Pahahan v.Danbury Police Department, Dkt No. 5:92CV0073 (GLG) (D. Conn). The federal court, Goettel J., denied McCall's motion to intervene, finding no substance to his allegations of racial discrimination.
In December, 1997, McCall filed a charge of discrimination against Danbury with the State of Connecticut Commission on Human Rights and Opportunities (CHRO), claiming that Danbury refused to hire him based on his race in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-60. Thereafter, McCall obtained a release of jurisdiction from the CHRO entitling him to pursue the claim in court.
On May 24, 1999, McCall filed an action against Danbury in the United States District Court for allegedly failing to hire him based on his race in violation of Title VII. He also asserted civil rights violations and various common law claims. On August 22, 2000, the federal court,Dorsey, J., granted Danbury's motion to dismiss or, in the alternative, for summary judgment as to all McCall's claims concluding, inter alia
that there was no genuine issue of material fact that McCall was treated no differently than similarly situated white candidates throughout the CT Page 586 hiring process and that the hiring process had no disparate impact on African-Americans.
On January 13, 1999, McCall commenced the present action by service of the writ, summons and complaint upon Danbury. On June 16, 1999, McCall filed a revised amended complaint alleging that Danbury discriminated against him in violation of CFEPA by refusing to hire him because of his race. On July 1, 1999, Danbury filed an answer and two special defenses. The first special defense alleges that McCall's action is barred by the doctrines of res judicata and collateral estoppel.
 III DISCUSSION
The Connecticut Supreme Court has instructed that because the doctrine of res judicata or collateral estoppel, if either is properly raised and established, will preclude the trial of a claim or issue, respectively, it is necessary to determine these issues first. Crochiere v. Board ofEducation, 227 Conn. 333, 342, 630 A.2d 1027 (1993). Further, it is well recognized that summary judgment is an appropriate vehicle to resolve a res judicata or collateral estoppel claim. See e.g. Jackson v. R.G.Whipple, Inc., 225 Conn. 705, 712, 627 A.2d 374 (1993).
 Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. Collateral estoppel or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. (Internal quotation marks omitted.)
Virgo v. Lyons, 209 Conn. 497, 501, 551 A.2d 1243 (1988).
 The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others certainty in the management of their affairs which results when a controversy is firmly laid to rest. (Internal quotation marks omitted.)
State v. Ellis, 197 Conn. 436, 466, 497 A.2d 974 (1985). The purposes of these doctrines are: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) Id. CT Page 587
 [U]nder the doctrine of res judicata . . . a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim . . . [or any claim based on the same operative facts that] might have been made. . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding. . (Emphasis omitted; internal quotation marks omitted.)
Linden Condominium Assn., Inc. v. McKenna, 247 Conn. 575, 594, 726 A.2d 502
(1999). "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." Delahunty v. MassachusettsMutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996).
The court turns first to Danbury's assertion that McCall's claims in this court are barred by the doctrine of res judicata and/or collateral estoppel. As noted above, McCall claims he was illegally discriminated against in the process utilized by Danbury for selection of police officer candidates. The specifics of his claim are that: (1) white applicants with lower written test scores were hired; (2) he was not allowed to take the physical exam/agility test even though the job opening announcement from Danbury stated that all applicants who received a passing score on the written test would be administered those tests; and (3) that a white applicant with the same test score as McCall was selected on the basis that his application was filed before McCall' s. In his affidavit in opposition to summary judgment, McCall makes these claims in the following words:
Basically, my case against the defendants alleges discrimination in that I was not hired as a police officer even though I am of African-American descent, am well and fully qualified for the position of police officer having obtained a score of 92/100 on the written examination given for police officer and defendants acknowledge that other white persons were subsequently hired who had written test scores of 89, 90 and 92, which are less than or no higher than my score. Further, I was prevented from taking the physical agility test, which defendants subsequently tried to justify by testifying that the job announcement, which indicated that all who had passed the written test would take the physical test, contained a "mistake." That mistake was never CT Page 588 rectified or even acknowledged other than in defense of my claim. Defendants further tried to justify the hiring of a white person who had the same written score as I had on the basis that he filed his application before I filed my application. That justification is false because the defendants violated their own rules concerning time stamping applications and there was no notice that preference would be given on the basis of earlier filing and, in any event, the documents of the defendant show that they did not place people in rank order in strict adherence to the so-called first filing rule. All of this will be demonstrated in their affidavit and the documents attached to it.
McCall Affidavit, 1-2.
In the Pahaham case, McCall along with seven other African-Americans and the Danbury Guardians Association sought to intervene and assert claims in an ongoing federal case in which the City of Danbury and the plaintiffs had entered into a consent decree in 1994 covering hiring procedures for the police department. All the interveners were represented by the attorney who now represents McCall. The proposed intervener complaint alleged that McCall and others were discriminated against on the basis of their race in connection with the ranking and selection of police officer candidates based on the 1996 civil service examination. The federal court conducted several conferences and a two day evidentiary hearing.
In its decision, the court granted intervener status to some but not all, and McCall's application was denied. The federal court also denied the request of those who were allowed to intervene for an injunction prohibiting Danbury from implementing its hiring decision. In rendering its decision, Judge Goettel made several findings pertinent to this case. Specifically, the court found that: (1) there was no merit to the proposed interveners' (including McCall) contention that white police officer candidates were given unwarranted preferences, (2) the preference points were allocated in accordance with state law, and (3) the failure to administer a physical test to certain applicants (including McCall) was not pertinent because the outcome of the test (pass or fail) would not have any positive impact on an applicant's standing on the test list since the list was ranked by written test scores and preference points only. See Pahaham, supra, Decision on Motion to Intervene and Findings of Fact and Conclusion of Law on Motion for Preliminary Injunction, October 15, 1997. CT Page 589
While these findings deal squarely with the claims of McCall in this case, their resolution does not act as res judicata or collateral estoppel because the judicial test for intervention is not necessarily the same as a merits determination. Indeed, Judge Goettel specifically noted:
 This determination is without prejudice to the institution of any new litigation those applicants [i.e. McCall] may choose to pursue challenging the methods presently used to select police officers in Danbury.
Id., 19
In his subsequent federal court discrimination suit, McCall alleged that he applied for a police officer position in Danbury, took the written civil service exam in March, 1996, and received a score of 92 (a passing score). McCall further alleged that he was not allowed to take further tests such as the physical agility test and that he was not selected for an officer position in Danbury even though some white candidates with scores lower than McCall's 92 on the written test were: (1) allowed to take the additional tests, and (2) were hired as police officers. Complaint, McCall v. City of Danbury, et al., Docket No. 3:99CV00968 (PCD).
The complaint was filed in May, 1999. In August, 2000, Senior United States District Judge Dorsey granted the defendants' (including Danbury's) motion to dismiss or, in the alternative, for summary judgment. See McCall v. City of Danbury, et al., Docket No. 3:99CV00968 (PCD) (D.Conn. August 21, 2000). Judge Dorsey ruled as follows: (1) all persons who received lower written test scores than McCall who were either hired by Danbury or went on to further testing, including the physical/agility test, were treated thusly because they received preference points as veterans or special officers in accordance with the Connecticut General Statutes and Danbury ordinances. Id., 4. The white applicant who had the same test score as McCall and who was appointed an officer was properly considered before McCall in accordance with Danbury Civil Service Rules and Regulations because his exam application was filed earlier than McCall's ruling. Id., 4-5. Judge Dorsey also found that the failure to administer additional tests had no disadvantageous consequences to McCall. The federal court found there was no disparate treatment of McCall and the hiring practices of Danbury did not have a disparate impact on African-Americans. Id., 5-6. Therefore, the court dismissed McCall's Title VII claims and all other federal statutory and common law claims based on his allegations. CT Page 590
There is no question that Judge Dorsey's decision to dismiss McCall's claims was a determination on the merits. The summary judgment process in federal courts is not unlike the procedure in Connecticut courts in that it is predicated on a finding that there are no disputed material facts and that judgment for the prevailing party is warranted as a matter of law. Compare Fed.R.Civ.P. 56 with Practice Book § 17-49. In his federal case, McCall raised and litigated his claim that the decision not to hire him as a police officer and the process by which the decision was arrived at was in violation of Title VII of the Federal Civil Rights of 1964. The Connecticut Supreme Court has made clear that the scope and interpretation of the Connecticut Fair Employment Practices Act is guided by and largely co-extensive with federal Title VII. See e.g. Brittell v.Department of Correction, 247 Conn, 148, 167, 717 A.2d 1254 (1998) ("In defining the contours of an employer's duties under our state anti-discrimination statutes, we have looked for guidance to the federal case law interpreting Title VII. . . ."); Levy v. CHRO, 236 Conn. 96
(1996). Indeed, the pertinent language of the two statutes, while not identical, express their common purpose.[3]
Therefore, this court holds that McCall had a fair opportunity to litigate the claim he pursues in this action in his former federal action. The fact that this claim was brought under General Statutes § 46a-60 and the federal court claim under Title VII is of no moment. It is clear that the principles of res judicata and collateral estoppel apply to preclude relitigation in a state court that which has been, or could have been, fully litigated in federal court. Virgo v.Lyons, supra, 209 Conn. 497. As noted above, there is little difference between the Connecticut and federal race discrimination statutes. Even if McCall's claim in this case differed in legal theory from his federal Title VII claim, the principles of res judicata would apply since the facts giving rise to his claim are the same. Moreover, McCall could certainly have brought his state discrimination as part of his federal action, and it is likely the federal court would have entertained it since the same facts were involved and the theory of liability is substantially, if not entirely, identical. Under the principles of UnitedMine Workers of America v. Gibbs, 383 U.S. 715 (1966) and28 U.S.C. § 1367, the federal court had jurisdiction over the state claim and likely would have exercised it. Therefore, McCall had an adequate opportunity to litigate his state law claim. ConnecticutNational Bank v. Rytman, 241 Conn. 24, 44-45, 694 A.2d 1246 "(1997);Daoust v. McWilliams, 49 Conn. App. 715, 716 A.2d 922 (1998).
Under the doctrine of res judicata, or claim preclusion, a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim. CT Page 591
DeMilo Co. v. Commission of Motor Vehicles, 233 Conn. 281, 292,659 A.2d 162 (1995).
As noted above, McCall has moved for a continuance pursuant to Practice Book § 17-47, claiming a need for more discovery before Danbury's motion for summary judgment can be decided. The party opposing summary judgment on those grounds carries the burden of persuasion that a continuance is warranted. Peerless Ins. Co. v. Gonzalez, 241 Conn. 476,697 A.2d 680 (1997). In this case, McCall has not pointed out any specific piece of evidence that he has not been able to procure. In fact, most, if not all, of the factual allegations he makes are admitted or undisputed. In addition, McCall had the discovery procedures of two court systems available to him for well over a year. For these reasons, the continuance is denied. Great Country Bank v. Pastore, 241 Conn. 423,696 A.2d 1254 (1997).
A careful reading of the full record and all the motion papers lead this court inexorably to the conclusion that the doctrine of res judicata should prohibit McCall from relitigating his claims. His factual and legal arguments have been carefully considered twice and rejected. The legal system is not required to do more; therefore, the motion for summary judgment is granted.
Adam, Judge.